STONER *v.* RIGGS.

1. Actions—Incompetents—Guardians Ad Litem.
   The appointment of a guardian *ad litem* for an incompetent defendant in an action at law is unnecessary where an appearance has been entered by his general guardian as guardian and attorney.

2. Accounts—Mutuality—Statute of Limitations.
   Where plaintiff had charge of the loaning and collecting of defendant's money for a series of years, and, on submitting an

account of the business, defendant promised to pay him for his services, the claim therefor became a part of the mutual account, unaffected by the general statute of limitations, though it was not entered on the books, and the value of the services was not agreed upon.

3. TRIAL—EVIDENCE—HARMLESS ERROR.

In an action for services in conducting defendant's business, plaintiff was cross-examined at length as to certain checks drawn by him, but the checks themselves, not being included in the bill of particulars of set-off, were excluded, after defendant's refusal to amend. *Held*, not prejudicial.

4. SAME—INSTRUCTIONS—PREPONDERANCE OF EVIDENCE..

An instruction defining the rule as to preponderance of evidence as meaning "simply that the evidence offered in favor of a proposition must be of a little better quality than that opposed to it," if inaccurate, was not prejudicial to defendant, on whose behalf no direct testimony had been introduced.

Error to Genesee; Wisner, J. Submitted June 6, 1901. Decided July 19, 1901.

*Assumpsit* by Cicero J. K. Stoner against Fred F. Riggs for services performed and moneys expended. From a judgment for plaintiff, defendant brings error. Affirmed.

*Clarence Tinker* (*Durand & Carton, Osborn & Mills,* and *J. L. Topping,* of counsel ), for appellant.

*W. E. Scott,* for appellee.

HOOKER, J. The plaintiff brought this action against his wife's father, an incompetent, under guardianship, serving process upon the defendant. His guardian entered his appearance as attorney and guardian, and conducted the defense, and appears in this appeal. The items for which plaintiff claims a right to recover grow out of dealings which plaintiff alleges to be mutual. They are given in the bill of particulars, as follows:

This action is brought to recover the balance of the following account:

For services rendered from October 27,
   1877, to July 30, 1894, in caring for the
   property, both real and personal, loan-
   ing and collecting, etc., for F. F.
   Riggs, at $60 per year_____$1,000 00
To cash, one-half the family expenses
   from October 17, 1894, to October 6,
   1895_____  201 00
To cash, the family expenses from Oc-
   tober 6, 1895, to January 4, 1896, 13
   weeks, less $8.70_____   93 19
To cash, the family expenses from Janu-
   ary 4, 1896, to June 20, 1897, 24 weeks_  179 21
                                ————  $1,473 40

To care and nursing by self and wife,
   from March 11, 1895, to June 20, 1896,
   66 weeks, 16 weeks, at $10_____ $160 00
Living in Riggs' house, 50 weeks, at $7__  350 00
                                  ————   510 00

Then followed fourteen items, giving dates, in 1896 and 1897, amounting to $41.60, making a total of $2,025. A claim for interest, amounting to $1,358.15, was included in the bill.

A bill of particulars of set-off included alleged payments of money to plaintiff in defendant's behalf at different dates in 1878, 1880, and from 1882 to October 17, 1894. A notice of the statute of limitations was given and is relied on.

In support of his claim, the plaintiff testified that he had charge of defendant's business affairs, by arrangement and employment, from October 27, 1877, to July 30, 1894, during which time he loaned and received money for him, on many occasions, while he was absent in Colorado, and that during the same period he kept an account of the business, which he submitted to the defendant, showing a balance of the trust funds of $430 in his hands, and that defendant then promised to pay him for his services when he should sell his mine in Colorado. The amount was not mentioned, or payment of the $430 demanded, and the jury probably found that it was treated as an item to be applied on the service. He also testified

that about October 17, 1894, he moved into the house with the defendant, under an arrangement that they were to share living expenses equally, and that they lived thus for several years, and that the defendant owes upon yearly balances for moneys expended in that transaction, also for care and nursing by plaintiff and wife in 1895, at a time when defendant was suffering from a broken leg, and for medicines and various other things.

The defendant appealed from a verdict in favor of plaintiff, and has since died.

The briefs of defendant's counsel state that:

"Concerning the latter arrangement there was little controversy as between the parties. The contention made at the trial concerned the claim for services said to have been rendered between October, 1877, and July, 1894, and the testimony admitted and rejected with reference thereto, and the instructions of the court to the jury."

"I have carefully examined the record, and there are only two questions in it: *First*, whether the account, as made by Mr. Stoner, is a continuing account, or whether the same is governed by the statute of limitations; *second*, whether it is necessary to have a guardian *ad litem* appointed in a case like this."

We feel justified, therefore, in treating the claim for services as the only one in dispute.

At the common law, a distinction existed between actions at law and in equity.

"At law, a lunatic defends in the same manner as ordinary persons. Process is served upon him personally; then, if an infant, he appears by guardian, and, if of full age, by attorney. * . * * In suits in equity the practice is different. In .those he defends by guardian *ad litem*, and his committee is appointed such guardian as of course, unless there is no committee, or the committee is in interest adverse to him in the suit." *Van Horn* v. *Hann*, 39 N. J. Law, 213.

See *Bearinger* v. *Pelton*, 78 Mich. 114 (43 N. W. 1042), where a guardian *ad litem* was held necessary in a foreclosure case in chancery, where the defendant was an infant. See, also, 3 Comp. Laws, § 10461 *et seq.*, which

seems to require the appointment of a guardian *ad litem*
in all suits against infants. There seems to be no such
statute applicable to the insane or *non compos mentis.*
It is said that in most States there need be no guardian *ad
litem,* if the infant have a probate or other authorized
guardian competent to act; and the case of *Bearinger* v.
*Pelton* is treated as involving a statutory exception.
Woerner, Guardianship, p. 66, § 21. The same author
says (section 145) that "there is little, if any, difference
between guardians *ad litem* for minors and those for in-
sane litigants. The latter defend by general guardian or
committee, if one has been appointed," etc. See, also, 9
Enc. Pl. & Prac. p. 937; 10 Enc. Pl. & Prac. p. 1229;
*King* v. *Robinson,* 33 Me. 114 (54 Am. Dec. 614). In
this case the guardian, who was an attorney, appeared in
both capacities, and we may assume that it was with the
approval of the court, if such approval was necessary.
We have considered this question, although no exception
was taken upon the trial.

Upon the question whether the item for services was
mutual, we find no authorities cited in support of the
proposition that such item must be considered by itself,
and not in connection with the moneys received and paid
out by the plaintiff. We see no reason for so holding.
The fact that it was not made a book item, while the
others were, is not controlling, and the alleged agreement
to pay for the services, made in connection with defend-
ant's examination of plaintiff's account of the fund in his
hands, would seem to make it such within the rule laid
down in the case of *Kimball* v. *Kimball,* 16 Mich. 218.
See, also, *Campbell* v. *White,* 22 Mich. 186, 187; *White*
v. *Campbell,* 25 Mich. 471; *In re Hiscock's Estate,* 79
Mich. 536 (44 N. W. 947); *Lester* v. *Thompson,* 91 Mich.
245 (51 N. W. 893). The court did not err in refusing to
take from the jury this question, and the question of the
statute of limitations.

Error is assigned upon the exclusion of a large number
of checks relating to the business of defendant during the

period that the plaintiff had it in charge. It was admitted that the items covered by them were not included in the bill of particulars, and defendant declined to amend his bill of particulars when told that by so doing they would be made admissible. They were present, and plaintiff was examined at length upon many, if not all, of them. We are unable to see where the defendant suffered injury through their exclusion.

We may say the same in relation to the court's charge upon the preponderance of evidence. It was as follows:

" I have stated to you in what a preponderance consists. It is simply that the evidence offered in favor of a proposition must be of a little better quality than that opposed to it. You are to canvass all the evidence in the case, and, if you act in favor of the defendant [ plaintiff ], it must be because you find it preponderates in his favor; but you have no right to cast aside testimony upon any particular point, unless you find it is disputed in some way, either by direct testimony or circumstantial evidence. In this case there is no direct testimony offered in favor of the defendant, but the defense is claimed to exist by reason of certain circumstances that have been shown in the case, and that matter is entirely for your consideration; the court has nothing whatever to do with it."

The other points discussed in the briefs relate to portions of the charge in which we find no error.

The point that the item for nursing should not have been submitted to the jury does not appear to be properly raised, and the same may be said of the denial of a motion for new trial.

The judgment is affirmed.

The other Justices concurred.