gressed as you anticipated. Please let me know what you can do in this matter as my finances are crippled by several matters that are delayed.

"Yours truly,                                              Lemuel W. Serrell."

To this letter Mr. Forbes replied under date of January 12, 1895:

"Dear Mr. Serrell: Yours of the 8th instant, received, and will have my earliest attention. I consider myself responsible for this bill of Mr. Sachs.

"Yours truly,                                              Francis Forbes."

There can be no question but that the language of the letter of Mr. Forbes constitutes an acknowledgment of the debt to which his attention had been called, and there is nothing therein inconsistent with an intention on the part of the writer to pay it. This would seem to make it a sufficient acknowledgment to remove the claim from the operation of the statute, within Manchester v. Braedner, 107 N. Y. 346, 14 N. E. 405, 1 Am. St. Rep. 829, and it was made under such circumstances as fairly imply a promise to pay. This seems to be, therefore, a sufficient compliance with the terms of the statute. Conn. Trust & S. D. Co. v. Wead, 172 N. Y. 497, 65 N. E. 261, 92 Am. St. Rep. 756. The acknowledgment is not inconsistent with the claim that Mr. Forbes was a mere guarantor of the debt, and that the primary obligor was Sachs. But the jury having found, upon sufficient evidence for that purpose, that the primary obligation was that of Forbes, this letter must be considered as an acknowledgment of his debt, and it is susceptible of such construction. The court was therefore correct in holding and charging the jury that this acknowledgment operated to take the claim out of the bar of the statute. This holding was in harmony with the charge which the court had made that, unless the obligation of Mr. Forbes at the inception of the employment was primary upon his part, there could be no recovery in favor of the plaintiff in the action.

These views dispose of all the material questions raised, and we find no others which require comment. It follows, therefore, that the judgment and the order denying motion for a new trial should be affirmed, with costs, and the appeal from the order permitting amendment of the summons and complaint dismissed, without costs. All concur, except INGRAHAM, J., who dissents.

---

AMERICAN MORTG. CO. v. DEWEY et al.

(Supreme Court, Appellate Division, First Department. July 7, 1905.)

INSANE PERSONS—APPOINTING PARTY TO REPRESENT INCOMPETENT.

Code Civ. Proc. § 427, provides that if the court has reasonable grounds to believe that a defendant is mentally incapable of protecting his rights, though not judicially declared to be incompetent, the court may, in its discretion, and in defendant's interest, make an order requiring a copy of the summons to be delivered to a designated person in behalf of defendant. In a suit to foreclose a mortgage, an order was made requiring a copy of the summons to be served on a person in behalf of a married woman who was insane. *Held*, that in surplus-money proceedings, in order that there might be a determination as to whether her inchoate

dower right had ever been legally released, the court should have amended the original order of appointment so as to give the appointee the right to appear in the surplus-money proceedings, or have designated another person to so appear.

Appeal from Special Term, New York County.

Action by the American Mortgage Company against William C. Dewey and others. From an order denying a motion for the appointment of a person to appear in the interest of an insane party upon the reference in surplus-money proceedings, William C. Dewey appeals. Reversed.

This action was brought to foreclose a mortgage, and has resulted in a surplus amounting to between $45,000 and $50,000. The property was formerly owned by William C. Dewey, who conveyed it to the New England Realty Company in October, 1903. It appears that the defendant Ella F. Dewey, his wife, was then and is now insane, and confined in an asylum without this state; that she has never been judicially declared insane in proceedings instituted for that purpose, and no committee of her person or estate has as yet been appointed. Dewey at the time of the conveyance signed his wife's name to the deed, acting under what purported to be a power of attorney executed by her in April, 1903. It was within a few weeks after this alleged power of attorney was executed by her, and over five months before it was exercised by the husband, that she became violently insane, and was placed in the asylum, where she has since remained, except during a short interval when she was brought to the city of New York and personally served with the summons in this action. Upon an affidavit showing that there was reasonable ground to believe that she was mentally incapable of protecting her rights, although not judicially declared to be incompetent, the plaintiff procured an order requiring a copy of the summons to be served on her, and also delivered on her behalf to one Thomas F. Keating. Mrs. Dewey has not appeared in the action, and there is a question as to whether or not her inchoate dower right in the surplus fund has ever been legally released; and, to the end that whatever interest she might have therein should be properly protected, her husband made this application for the appointment of a proper person to appear for her upon the reference in the surplus proceedings, which motion was denied, and from the order denying it this appeal is taken.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Paul Crandall, for appellant.
Charles Howland, for respondent.

O'BRIEN, P. J. The view entertained by the learned judge at Special Term was that the court had no power to grant the application. It must be conceded, in view of the wife's relation to the property out of which the surplus fund has grown, and the fact that she appears to be mentally incapable of protecting her own interest, that if the power exists it should be exercised in the appointment of a guardian or some suitable person to protect her interest in the surplus realized after a sale of the property under a judgment of foreclosure. In approaching this question of the power of the court, we should keep in mind that the court of chancery was clothed by statute with the care and custody of infants, idiots, and lunatics (2 Rev. St. [1st Ed.] p. 52, pt. 2, c. 5, tit. 2, § 1), and that the power formerly exercised by that court is now vested in

the Supreme Court.    Hunter v. Hatfield, 12 Hun, 382; In re Blew-
itt, 131 N. Y. 541, 30 N. E. 587.    As said in the latter case:

"The jurisdiction which formerly was vested in the chancellor over the
person and estate of lunatics is now exercised by the Supreme Court. But
the Supreme Court exercises the power under the same rules as appertained
to and regulated the jurisdiction of the chancellor, subject to such statutory
provisions as are contained in the Code of Procedure."

Referring to the Code of Civil Procedure, we find that section 427
provides:

"If the defendant is an infant of the age of fourteen years, or upwards,
or if the court has, in its opinion, reasonable ground to believe, that the de-
fendant, by reason of habitual drunkenness, or for any other cause, is men-
tally incapable adequately to protect his rights, although not judicially de-
clared to be incompetent to manage his affairs, the court may, in its dis-
cretion, with or without an application therefor, and in the defendant's inter-
est, make an order, requiring a copy of the summons to be also delivered, in
behalf of the defendant, to a person designated in the order, and that service
of the summons shall not be deemed complete, until it is so delivered."

In Behlen v. Behlen, 73 App. Div. 143, 76 N. Y. Supp. 747, where
a guardian ad litem was appointed for an insane defendant who had
interposed an answer, this court held that, whilst such guardian
was not entitled to be made a party, he was, however, entitled, un-
der the provisions of section 427 and 428 of the Code of Civil Pro-
cedure, to notice of all further proceedings in the action, and, to the
extent that it might be advisable and proper, to intervene therein
and "conduct the defense for the incompetent defendant."

In the nature of things, it was impossible for the Legislature to
meet every condition that might arise as affecting the person or
property of incompetents, whether judicially declared insane or
not; but it does not follow, because we cannot find an express pro-
vision in the Code of Civil Procedure conferring the power, or regu-
lating the mode or manner of exercising it, to protect the interests
of lunatics and incompetents, that therefore the court lacks the
power to protect such persons in some adequate manner.    It has
been repeatedly held that the power exists in the court, and, where
there are provisions in the Code of Civil Procedure describing the
way in which this power shall be exercised, those provisions must
be complied with and followed; but, where there is an absence of
provisions regulating the exercise of the power, then it becomes the
duty of the court to determine the mode or manner in which the
power can be best exercised to effect the end desired.    In other
words, the power is inherent in the court, and is not conferred by
the Code, but the latter in many instances merely prescribes when
and how it shall be invoked.

Examining the authorities with this in mind, we find that, whilst
the designation or appellation of the one selected to represent the
incompetent differs, still the end to be reached is the same, namely,
the protection of the interests of the incompetent.    Thus in Hanley
v. Brennan, 19 Abb. N. C. 186, it was held that the City Court has
power, aside from any provision of the Code, to appoint a guardian
ad litem for a lunatic defendant upon the plaintiff's application, al-
though he was of full age, had not been judicially declared insane,

and no committee of his person or estate had been appointed. As therein said:

"We do not find any express provision of the Code especially applicable to such a case, but we do find authorities which assert the existence of the power and approve of its exercise."

And in O'Brien v. O'Brien (Sup.) 38 N. Y. Supp. 157—a Special Term decision by the late Judge Beekman—it was held that:

"As there is no provision of law for the appointment of a special guardian ad litem of a defendant who is a lunatic, but who has never been judicially declared to be so, the proper method of bringing such a defendant before the court is by an application for an order designating some person upon whom a copy of the summons shall be served in addition to service upon such lunatic, under Code Civ. Proc. § 427."

The distinction to be noted in these two cases, which are but exemplars of others that might be referred to, is that, whilst the appointment of some one to look after the interests of the incompetent was upheld, he was designated in one case as a guardian ad litem, and in the other merely as a person upon whom the summons could be served. By whatever term he is designated, if one so selected, as intimated by the learned judge at Special Term, had no further duty devolving upon him than to receive the summons, so that in plaintiff's interest the court could acquire jurisdiction over the incompetent, then, clearly, so far as being of any advantage in protecting the interests of the incompetent, the designation would be useless. In adopting this view the learned judge overlooked the express language of section 427 of the Code of Civil Procedure, which provides that the court "may * * * in the defendant's interest make an order" designating the person upon whom the service is to be made.

Nor do we think that merely receiving the summons is all that the person designated to represent a defendant who has substantial interests in the controversy, and who is non compos mentis, but who has not been judicially declared insane, is required to do. We think the provisions in the order should be sufficiently broad to enable him to look after the interests of such defendant at every stage of the action. In a foreclosure suit this includes not only the duty of representing the incompetent up to the time of the judgment in foreclosure and sale, but also interests the incompetent may have in the surplus realized after a sale. As said in Behlen v. Behlen, supra:

"Some competent person should be apprised of all matters in the litigation affecting the interests of the defendant, and that such interests should be protected was the very purpose of appointing the guardian ad litem."

It was there held that the order should be so far modified as to give the guardian the right "to look after the interests of the alleged incompetent defendant."

When the present application was made to the Special Term in the interest of the incompetent, there were two courses which might have been followed—one to amend the original order appointing Thomas F. Keating, so as to give him the additional right to appear in the surplus proceeding and protect the interests of the

incompetent, or the court could regard the surplus proceeding as-
a new and independent proceeding in the action, and therein, by
virtue of the inherent power vested in the court, it could make a
designation of the same or another person, who would have the-
right to appear and protect the interests of the incompetent upon
the reference ordered to determine as to the persons entitled to the-
surplus fund.

The order should accordingly be reversed, with $10 costs and dis--
bursements, and with leave to renew the application at Special
Term on papers that shall include a copy of the original order ap--
pointing Keating.   All concur.