COHEN *v.* HOME LIFE INSURANCE CO.

1. MORTGAGES—VOIDABLE FORECLOSURE DECREE—INSANE PERSONS.
   Decree in mortgage foreclosure proceedings rendered against an insane defendant for whom no guardian or guardian *ad litem* had been appointed after service of process and before further prosecution *held,* voidable but not void, hence not subject to collateral attack (3 Comp. Laws 1929, § 14038).

2. Judgment—Res Judicata—Guardians—Insane Persons.

Denial of petition by guardian of an insane person to set aside her default in chancery foreclosure proceedings *held*, in effect a petition to vacate decree, hence, where not appealed from, is *res judicata* of matter raised by bill by guardian *ad litem* to vacate said decree.

3. Same—Res Judicata.

When a matter has once been litigated, determination reached thereon and no appeal therefrom taken, the parties are not entitled by independent bill to relitigate the same questions, even though additional facts are set up in the bill and additional prayers appended thereto.

4. Insane Persons—Appointment of Guardian.

It is duty of plaintiff to inform court of fact of insanity of party defendant and to not proceed without appointment of a guardian *ad litem* but plaintiff's failure to do so merely renders decree voidable if questioned in a direct proceeding (3 Comp. Laws 1929, § 14038).

5. Mortgages—Foreclosure—Insane Persons—Delayed Appeal.

Bill by guardian *ad litem* will not lie to vacate decree of foreclosure against his ward where guardian's petition to set aside her default in foreclosure proceedings was denied, review, if any, being confined to that obtainable in proceedings for delayed appeal as provided by Court Rule No. 60 (1933).

Potter, C. J., and Bushnell and Edward M. Sharpe, JJ., dissenting.

Appeal from Wayne; Webster (Arthur J.), J. Submitted April 24, 1935. (Docket No. 122, Calendar No. 38,415.) Decided December 10, 1935.

Bill by Theresa Cohen, by her next friend Edward Leed, against the Home Life Insurance Company, a New York corporation, and Thomas C. Wilcox, sheriff of Wayne county, to set aside a decree of foreclosure. Bill dismissed. Plaintiff appeals. Affirmed.

*Maurice D. Smilay,* for plaintiff.

*Dudley E. Whiting,* for defendant.

WIEST, J. The following opinion was prepared by the late Justice NELSON SHARPE and I adopt it, with slight addition thereto.

Prior to July 5, 1933, Theresa Cohen was adjudged to be a mentally incompetent person and was committed to the Ypsilanti State hospital for the insane. On that day a suit was brought against her by the defendant insurance company to foreclose a mortgage on certain real estate owned by her, and the summons was served on her at the hospital. No guardian *ad litem* was appointed to act for her. Her default was entered, decree rendered on May 10, 1934, sale had, and an order entered in confirmation thereof on July 16, 1934.

On August 28, 1934, a motion was filed in the foreclosure suit by Rubin Cohen,* guardian of Theresa Cohen, for leave to appear for her, to set aside her default for the reason that no guardian *ad litem* had been appointed for her, and for the appointment of a guardian *ad litem* to defend in her behalf. It was denied on October 9, 1934. On January 14, 1935, the bill of complaint herein was filed to set aside the decree of foreclosure and the sale based thereon for the reason that the failure to appoint a guardian *ad litem* for the plaintiff rendered the proceedings void and of no force or effect. On motion of the attorney for the insurance company it was dismissed for the reason as stated by the trial court—

"That my denial of defendant's (plaintiff in this suit) motion in the foreclosure suit to set aside default and decree based thereon is *res judicata* of all matters stated in the bill of complaint in this cause."

Plaintiff has appealed therefrom.

---

*The opinion of the late Justice NELSON SHARPE asserted Edward Leed was guardian of Theresa Cohen. Mr. Leed was appointed her guardian *ad litem* on January 14, 1935.—REPORTER.

Section 14038, 3 Comp. Laws 1929, reads in part as follows:

"After the service of process or declaration, if the suit be commenced by declaration, against a defendant who is an infant, or who is insane or otherwise mentally incompetent, said suit shall be defended by the guardian of the estate of such defendant, if there be one; otherwise such suit shall not be further prosecuted until a guardian *ad litem* for such person shall be appointed, in the manner following."

The statute applies alike to infants and persons who are insane. In *Schimpf* v. *Wayne Circuit Judge,* 129 Mich. 103, it appeared that a judgment had been rendered against an infant without the appointment of a guardian *ad litem* for him. The court said (104):

"There can be no doubt from the record that due service of process was had upon the defendant. The judgment was not void because of the failure to appoint a guardian *ad litem,* but voidable merely."

This holding was approved in *DeGuzman* v. *Wayne Circuit Judge,* 225 Mich. 606, 610.

In 14 R. C. L. p. 615, in discussing the validity of judgments or decrees against insane persons, the writer states—

"That the rule is substantially uniform that such judgments or decrees are not void but merely voidable under circumstances that would render any other judgment or decree voidable, and that they will be sustained when collaterally attacked."

See, also, *Graham* v. *Nippress,* 222 Mich. 386.

The petition filed by plaintiff's guardian to set aside her default was, in effect, one to vacate the decree entered. It was denied by the court. As

was said by this court in *Knoth* v. *A. Harvey's Sons Manfg. Co.,* 212 Mich. 415, 421:

"The matter having once been litigated and a determination having been reached thereon, and no appeal having been taken from that determination, the parties are not now entitled by independent bill to relitigate the same questions, even though additional facts are set up in the bill and additional prayers appended thereto."

In *Curtis* v. *Curtis,* 250 Mich. 105, the mentioned statute was again considered and there held that:

"It was the duty of plaintiff to have informed the court of the fact (infancy of defendant) and to not proceed without the appointment of a guardian *ad litem.* Failure to do so, however, did not oust the court of jurisdiction, for the statute mentioned is procedural only, but did render the decree voidable if questioned in a direct proceeding such as this (Petition to vacate decree)."

The bill herein cannot serve the purpose sought, for review now, if any, can only be had by application for and allowance of a delayed appeal as provided by Court Rule No. 60 (1933).

The decree dismissing the bill is affirmed, with costs to defendant Home Life Insurance Company.

North, Fead, and Butzel, JJ., concurred with Wiest, J.

Potter, C. J. (*dissenting*). The facts in this case are not in dispute:

"The plaintiff is the owner of the following described property: Lot 40 Virginia Park subdivision of part of quarter section 55, 10,000-acre tract, according to the plat thereof as recorded in liber 28

on page 80 of plats, and being known as 1469 and 1471 Virginia Park, in the city of Detroit, county of Wayne and State of Michigan. That the defendant, the Home Life Insurance Company, a New York corporation, has a mortgage on said premises which mortgage is dated March 9, 1928, and is for the sum of $9,000. That the plaintiff is a mentally incompetent person, declared as such by the probate court for the county of Wayne and committed by said court as such to the Ypsilanti State hospital for the insane prior to July 5, 1933.

"That on July 5, 1933, the said defendant, Home Life Insurance Company, commenced foreclosure of said mortgage in the Wayne circuit court in chancery by filing a bill of complaint and having summons issued, being file No. 217,469; that said summons was served on the defendant by authority of the physician in charge at the Ypsilanti State hospital for the insane; that no guardian *ad litem* was appointed to defend in behalf of said mentally incompetent, although the defendant must be deemed to have had knowledge that said defendant, plaintiff in this suit, was an insane person; that on May 10, 1934, a decree of foreclosure was entered by default, ordering the sale of said property to the highest bidder; that on July 16, 1934, a report of sale and an order confirming same to the plaintiff, the defendant in this suit, was filed in the Wayne circuit court; that on August 28, 1934, a motion was filed in the foreclosure suit by defendant's guardian, praying that he be allowed to enter his appearance in behalf of the insane person, and further to set aside the default of the defendant, plaintiff in this suit, the decree based thereon, and for the appointment of a guardian *ad litem* to defend in behalf of the insane defendant. Such motion was denied by the circuit court on the 9th day of October, 1934.

"That on January 14, 1935, Edward Leed was appointed guardian *ad litem* for the plaintiff, and on the same day a bill of complaint was filed in the

Wayne circuit court to set aside the decree of foreclosure, and the sale based thereon; that a motion to dismiss said bill of complaint was filed January 17, 1935, and an order dismissing same was entered January 28, 1935, from which order plaintiff appealed."

July 5, 1933, the foreclosure bill was filed. May 10, 1934, the foreclosure decree was entered. July 16, 1934, report of sale and order confirming the same was made and entered. August 28, 1934, motion was made by the general guardian of defendant to set aside defendant's default and permit defendant's general guardian to appear and/or to set aside defendant's default, and appoint a guardian *ad litem* for defendant to defend in her behalf. We assume the summons issued was served upon the insane defendant prior to the entry of her default, and plaintiff in the foreclosure suit had knowledge upon the filing of the foreclosure bill that defendant was insane and confined as such in the Ypsilanti State hospital for the insane.

The question is, whether defendant's guardian *ad litem* may have the remedy sought for the admitted wrong erroneously inflicted by the trial court's disregard of the provisions of the statute (3 Comp. Laws 1929, § 14038) directing that in all cases prosecuted against an insane defendant such defendant's rights shall be protected by a guardian *ad litem* appointed by the court. The principles involved and the policy of the court as hitherto declared and followed in administering the principles of equity jurisprudence, as modified by express statutory enactment, are of infinitely more importance to the public than the value of the property rights of defendant sought to be taken in violation of the statute and, as I think, without due process of law.

"Every man is entitled to his day in court before his rights can be finally disposed of, and even the legislature could not deprive him of the right." *Ehlers* v. *Stoeckle,* 37 Mich. 261.

"A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights and is not entitled to respect in any other tribunal." *Windsor* v. *McVeigh,* 93 U. S. 274, 277.

An insane person, one *non compos mentis,* is incapable of acting to protect his rights from the rapacity of those instituting suits against him. At common law, the rights of persons *non compos mentis* were peculiarly under the protection of the king, who, from the nature of the organization of the English government, was bound, as *parens patriæ,* to protect their rights, as helpless subjects, within his kingly realm. From the multiplicity of his social, political and military duties, not being able to give personal attention to the protection of the individual rights of his several insane and helpless subjects, the king delegated that authority to his chancellor by his sign manual—that is, by written power and authority, signed by the king in person, and delivered under his privy seal to the chancellor. The protection of the rights of insane persons were at common law to be protected by the chancellor as the personal representative of the king, the source of sovereignty, and not by the court of chancery. But, in this country, the prerogative power of the king is vested in the people, and, by statute, courts exercising equitable powers are charged with the duty of protecting the rights of insane persons. These principles are sustained by undoubted authority.

The king of England originally exercised exclusive power over insane persons as *parens patriæ,*

which power he personally delegated to his chancellor, as the representative of the crown, by his sign manual, signed by the king and under his own privy seal, so that the power was exercised, not by the court of chancery, but by the chancellor. Pomeroy's Equity Jurisprudence (4th Ed.), § 1311. It is a firmly established doctrine that the court of equity can and will appoint a guardian of the person and estate of an infant, when there is no other guardian, or none that can or will act. And the same rule applies as to insane persons. Pomeroy's Equity Jurisprudence (4th Ed.), § 1306.

In a proceeding of this kind, the insane defendant is the ward of the court, and in making a sale, "it is the peculiar duty of the court to see that his interests are protected." *McCalley* v. *Finney,* 198 Ala. 462 (73 South. 639).

In *Austin* v. *Bean,* 101 Ala. 133, 148 (16 South. 41), a defendant in foreclosure was *non compos mentis.* The court held he was to be treated as a ward of the court. It was said:

"It is the duty of the court to see that his rights are properly asserted and protected. For that purpose the guardian *ad litem* is under the control of the court. * * * It should have directed the guardian *ad litem* to file a separate cross-bill in behalf of the ward."

In *Feldott* v. *Featherstone,* 290 Ill. 485, 488 (125 N. E. 361), an insane person was made defendant. It is said:

"No guardian *ad litem* was appointed to represent his interests, but he was defaulted and a decree entered against him. * * * Infants and insane persons, when brought into court, become the wards of the court, and it is the court's duty to see that their rights are properly protected. If those who are in

a position where it would be supposed they would be interested in protecting the rights and interests of minors and insane persons fail to do so, it is the duty of the court to appoint someone for that purpose.''

What is the duty of the guardian *ad litem* when appointed? Clearly, it is his duty to appear and defend the case, not in a perfunctory manner, but actually to protect the rights of the insane defendant. And if the guardian *ad litem* fails to do so, it is the duty of the trial court to order and direct him so to do.

As said by the supreme court of the United States, in *Windsor* v. *McVeigh, supra:*

"Until notice is given, the court has no jurisdiction in any case to proceed to judgment, whatever its authority may be, by the law of its organization over the subject-matter. But notice is only for the purpose of affording the party an opportunity of being heard upon the claim or the charges made; it is a summons to him to appear and speak, if he has anything to say, why the judgment sought should not be rendered. A denial to a party of the benefit of a notice would be in effect to deny that he is entitled to notice at all, and the sham and deceptive proceeding had better be omitted altogether.''

In *Wiesmann* v. *Donald,* 125 Wis. 600 (104 N. W. 916, 2 L. R. A. [N. S.] 961), the court, in commenting upon a statute analogous to ours, said:

"Our statutes evince a policy to confer upon courts full power to protect the interests of insane persons who are in court without the protection of their guardians, by authorizing that in any case when a party shall appear to be insane the court or judge may appoint a guardian for the action, as the case may require, and by requiring that, in case of a defendant, he shall be protected by a guardian.''

In *American Mortgage Co.* v. *Dewey,* 106 App. Div. 389 (94 N. Y. Supp. 808), it was held that it was the duty of the court in foreclosure proceedings against an insane defendant, not only to appoint a person to represent the interests of the insane defendant in the foreclosure proceedings, but in proceedings subsequent to the sale of the property so far as they involve the surplus money arising from the sale.

In *Wurster* v. *Armfield,* 175 N. Y. 256 (67 N. E. 584), in a case for specific performance against the defendant, where there was testimony offered of defendant's incapacity, the court indicated such testimony should have been received; that no decree should have been entered against a person not of sound mind; and the decree was set aside and the trial court directed to protect the interests of the incompetent.

Where it appeared that one of the defendants was insane, it became the duty of the court, before any further steps were taken, to appoint a guardian *ad litem* to defend. Courts of equity have the inherent power to protect the rights of insane defendants. *American Mortgage Co.* v. *Dewey, supra; Michigan Trust Co.* v. *Ferry,* 99 C. C. A. 221 (175 Fed. 667).

. These principles have been repeatedly recognized and commented upon by this court. *Thayer* v. *Lane,* Walk. Ch. (Mich.) 200; *Chandler* v. *McKinney,* 6 Mich. 217 (74 Am. Dec. 686); *Smith* v. *Smith,* 13 Mich. 258; *Burt* v. *McBain,* 29 Mich. 260; *Damouth* v. *Klock,* 29 Mich. 289; *Walker* v. *Hull,* 35 Mich. 488; *Ballentine* v. *Clark,* 38 Mich. 395; *Cooper* v. *Mayhew,* 40 Mich. 528; *Peck* v. *Kent Circuit Judge,* 98 Mich. 639; *Stoner* v. *Riggs,* 128 Mich. 129; *Schimpf* v. *Wayne Circuit Judge,* 129 Mich. 103; *Frieseke* v.

*Frieseke,* 138 Mich. 458; *Erwin* v. *Fay,* 165 Mich. 503; *Curtis* v. *Curtis,* 250 Mich. 105.

In *Stoner* v. *Riggs, supra,* it is said:

"At the common law, a distinction existed between actions at law and in equity.

"'At law, a lunatic defends in the same manner as ordinary persons. Process is served upon him personally; then, if an infant, he appears by guardian, and, if of full age, by attorney. * * * In suits in equity the practice is different. In those he defends by guardian *ad litem,* and his committee is appointed such guardian as of course, unless there is no committee, or the committee is in interest adverse to him in the suit.' *Van Horn* v. *Hann,* 39 N. J. Law, 207, 213.

"See *Bearinger* v. *Pelton,* 78 Mich. 109, where a guardian *ad litem* was held necessary in a foreclosure case in chancery, where the defendant was an infant. See, also, 3 Comp. Laws (1897), § 10461 *et seq.,* which seems to require the appointment of a guardian *ad litem* in all suits against infants. There seems to be no such statute applicable to the insane or *non compos mentis.* It is said that in most States there need be no guardian *ad litem,* if the infant have a probate or other authorized guardian competent to act; and the case of *Bearinger* v. *Pelton, supra,* is treated as involving a statutory exception. Woerner, Guardianship, p. 66, § 21. The same author says (section 145, p. 481) that 'there is little, if any, difference between guardians *ad litem* for minors and those for insane litigants. The latter defend by general guardian or committee, if one has been appointed,' etc. See, also, 9 Ency. Pl. & Prac. p. 937; 10 Ency. Pl. & Prac. p. 1229; *King* v. *Robinson,* 33 Me. 114 (54 Am. Dec. 614).''

Where one whose interests were adverse to those of an infant defendant was appointed guardian *ad*

*litem* for such infant and filed an answer in denial of the infant's rights, it was said:

"This was an outrage upon the infant and upon the administration of justice, and the wrong is the more astonishing in this case because the fraudulent parties do not file any answer whatever on their own behalf, but undertake to shield themselves behind the answer of an infant who has been placed in their power, but who, personally, can know nothing of the facts. This guardian *ad litem* should be displaced by a disinterested party before the case proceeds further." *Damouth* v. *Klock, supra.*

Where a guardian *ad litem* neglected his duty and by reason thereof defendant did not have that hearing in equity which he was entitled to have, it was held to be clearly the duty of this court to reverse the order of the circuit court denying defendant a rehearing. *Frieseke* v. *Frieseke, supra.*

The whole object and purpose of the rule of the common law and of the principles of equity which underlie our statute is to see that the rights of all insane persons are protected by the court; that those are protected by the court who are unable to protect themselves. Of what real force or effect is the service of a chancery summons upon an insane defendant? If we lay aside the fictitious assumption of legal technicalities, the only object and purpose of the service of a summons in any case is to give the defendant notice of the institution of suit against him, and to enable him to appear and defend such suit and thus protect his rights. How can one who is insane, who, in legal contemplation, is, in fact, incapable of protecting himself, be protected when suit is instituted against him?

"The equitable principle is of universal application, that where a person is not equal to protecting

himself in the particular case, the court will protect him." *Connelly* v. *Fisher,* 3 Tenn. Ch. 382.

The statute, 3 Comp. Laws 1929, § 14038, provides:

"After the service of process or declaration, if the suit be commenced by declaration, against a defendant who is an infant, or who is insane or otherwise mentally incompetent, said suit shall be defended by the guardian of the estate of such defendant, if there be one; otherwise such suit shall not be further prosecuted until a guardian *ad litem* for such person shall be appointed in the manner following: If the defendant be an infant more than fourteen years of age, he may nominate such guardian *ad litem;* in all other cases the nomination may be made by the next of kin of said defendant, or any other relative or friend, whom said judge or commissioner may deem a proper person to make such nomination, and if said judge or commissioner approve the nomination so made, upon the filing of the written consent of the person proposed as guardian *ad litem,* he shall make such appointment. If such officer shall not approve of such nomination, he shall appoint some other suitable person as such guardian *ad litem.* The person so appointed shall not be liable for the costs of such suit, unless specifically charged by order of the court for some personal misconduct in such cause. If no such nomination is made within twenty days after the service of process or declaration, if the suit be commenced by declaration, the plaintiff may obtain an order from the court in which the proceedings are pending, appointing some suitable person to act as guardian *ad litem* for such person."

The proceedings by the trial court herein were taken in violation of the positive provisions of a mandatory statute prohibiting any further action upon the part of the trial court "until a guardian *ad*

*litem* for such person shall be appointed.'' It was the clear duty of the trial court, upon the fact being brought to its attention by motion or otherwise that it had inadvertently proceeded in clear violation of the provisions of the statute, to set aside its order or decree and appoint a guardian *ad litem* to represent the interests of the insane defendant, and to permit the court to proceed from that point in the usual and ordinary way. And it is the duty of this court so to do if it can be done without violation of law. To permit the decree rendered in this case by the trial court to stand is to uphold and approve the violation of the plain provisions of a mandatory statute; to aid the plaintiff in enforcing without due process of law what may be an illegal and unconscionable claim; to make a court of equity an instrument of inequity; to enable the plaintiff to base rights upon the wrongful act of the trial court in disregarding the positive provisions of a mandatory statute. Courts of equity regard the substance, rather than the form, of proceedings. That this proceeding is a hollow mockery under the forms of law, and that for the wrong perpetrated upon defendant she should have a corresponding right, cannot admit of question.

A judgment rendered without appearance or service of process is a nullity. 15 C. J. p. 798. The question of jurisdiction is always open (15 C. J. p. 850), and may be inquired into at any time. Courts are bound to take notice of the limits of their own jurisdiction. 15 C. J. p. 852. In attachment proceedings where the writ issued upon the filing of an insufficient affidavit, it was said:

''When the want of jurisdiction appears on the record of a court of general jurisdiction, the record

is a nullity, and no rights can be acquired under it. To hold otherwise, would be giving to courts a right, by the forms of law only, to take property from one individual, against his consent, and give it to another, by an *ex parte* proceeding not authorized by law.'' *Wilson* v. *Arnold,* 5 Mich. 98.

''The jurisdiction of a court exercising authority over a subject matter, may be inquired into in every court where the proceedings of the former are relied on, by a party claiming the benefit of such proceedings. The rule thus laid down is firmly established by the numerous decisions referred to in that case, and is recognized in all courts, where the common law prevails, as too firmly settled to be shaken. Another rule, sustained by an unbroken current of decisions in this country and England, is that, where a court is vested with extraordinary powers, under a special statute prescribing its course, that course ought to be exactly observed; and the facts which give jurisdiction ought to appear, in order to show that its proceedings are *coram judice.* These principles are applicable to all courts, whether of inferior or superior jurisdiction; the only difference being, that in respect to inferior courts, jurisdiction must appear on the face of the proceedings; while, in regard to superior courts, jurisdiction will be presumed, until the contrary is shown.'' *Greenvault* v. *Farmers & Mechanics' Bank,* 2 Doug. (Mich.) 498.

The jurisdiction of courts of equity over mortgage foreclosure proceedings is purely statutory. *Union Trust Co.* v. *Detroit Trust Co.,* 243 Mich. 451.

The defendant in this foreclosure proceeding was insane. Summons was properly served upon her. The return, if truthful, must have shown she was insane, and confined to the Ypsilanti State hospital for the insane. Such suit could not be further prosecuted until a guardian *ad litem* of the defendant was appointed. 3 Comp. Laws 1929, §14038.

The statute prescribed the course to be pursued in a special statutory proceeding, which course was to be exactly observed; and the facts to give the court jurisdiction to pass upon the rights of the defendant must have appeared in the record of the proceedings. Jurisdiction not only did not appear upon the face of the proceedings, but such proceedings affirmatively showed a violation of the positive provisions of a mandatory statute. Courts gain jurisdiction in statutory proceedings by following the terms of the statute, not by violating such terms.

In this case, the court acquired no jurisdiction to render a final decree. The want of jurisdiction to do so appeared upon the face of the record. The decree entered was a nullity, and no rights may be acquired under it. To hold otherwise would be to give to the court the right in a special statutory proceeding, by a plain violation of the positive provisions of a mandatory statute prescribing the procedure to be followed, to take property from one individual and give it to another without actual notice, hearing, or an opportunity to be heard; and this constitutes robbery, under the forms of law.

In *State, ex rel. Happel,* v. *District Court,* 38 Mont. 166 (99 Pac. 291, 35 L. R. A. [N. S.] 1098, 129 Am. St. Rep. 636), a petition was brought by plaintiff against the district court of the ninth judicial district, to set aside a decree of divorce rendered against an insane defendant without the appointment of a guardian *ad litem.* In disposing of the case, the court said:

"Assuming, as we must, that the decree is valid on its face, an appeal, though it lay at the time application was made for the appointment of the guardian *ad litem* by plaintiff, could not be effective, for the reason that the defect in the service of summons does not appear from the record. Nor could relief be had by motion in the district court, for the same

reason; for, though a judgment void on the face may be set aside on motion at any time   *   *   *   this rule does not apply to judgments fair on their face, the infirmity of which must be made to appear by evidence *dehors* the record.  Under the statute   *   *   * the motion in such cases must be made within a reasonable time after the date of the entry of judgment, but in no case exceeding six months, and the statute is the limit of the court's power in such cases. After the expiration of the time limit fixed therein, the power of the court over the judgment absolutely ceases, and it is without jurisdiction to vacate or modify it.   *   *   *   Toepper, therefore, has no remedy by motion.  Is he to be denied relief because he did not proceed under the statute within the six months?  We think not.  While it might with propriety be said that, if the action had been brought within the six months, relief should have been denied on the ground that he had an existing adequate remedy at law, the fact that proceedings were not taken in his behalf under the statute is not a conclusive reason why relief should be denied now.  In *Bibend* v. *Kreutz,* 20 Cal. 109, in considering a condition similar to that presented here, Mr. Justice Cope said: 'The assistance of equity cannot be invoked so long as the remedy by motion exists; but when the time within which a motion may be made has expired, and no laches or want of diligence is imputable to the party asking relief, there is nothing in reason or propriety preventing the interference of equity.' He quotes from Story's Equity Jurisprudence, § 885, with approval, as follows: 'In general, it may be stated that in all cases, where by accident, or mistake, or fraud, or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice, and it is therefore against conscience that he should use that advantage, a court of equity will interfere and restrain him from using the advantage which he has thus improperly gained.'

"In this State the statute applies to judgments at law as well as decrees in equity. * * * And whether the application for relief be denominated technically, a bill of review or an original bill in equity, the relief will be granted against them subject to the rule that a court will not, in the exercise of its equity power, interfere so long as there is another subsisting adequate remedy. As has heretofore been pointed out, relief cannot be had under the statute; nor is there any remedy other than an action in equity. Certiorari will not avail, because the defect of jurisdiction does not appear upon the face of the record. If it did, the judgment would be void upon the face of it, and it would be open to attack by motion invoking the power of the court to clear its record of that which purports to be a judgment, but which is in fact not such."

Motions to dismiss and to quash service are in this State governed by Court Rule No. 18 (1933). Motions for new trial and in arrest of judgment must be filed and served on the opposite party, the former within 20 days after entry of judgment, and the latter within 20 days after the rendition of verdict in case of trial by jury, and within a like time after the decision of the court when the cause has been tried by the court. Court Rule No. 47 (1933).

If the motion made on behalf of the defendant be regarded as an application for rehearing in an equitable proceeding, it is governed by Court Rule No. 48, § 1, which prohibits application for rehearing unless filed within two months after the entry of the final decree, except where application is made on the ground of newly-discovered evidence, in which case the application must be filed within four months. There is no claim here of newly-discovered evidence and, therefore, the trial court may have denied the application to set aside the decree upon the ground

it was in effect an application for rehearing not filed within two months from the entry of the original decree.

The action sought to be upheld is unconscionable. It will result in the taking of defendant's property without any actual hearing, and without any actual opportunity to be heard. A court of equity will not lend its aid to enforce an unconscientious claim or proceeding. *Waldron* v. *Murphy,* 40 Mich. 668. To do so, a court of equity is made an instrument of wrong, which should not be done. *Miller* v. *Cornwell,* 71 Mich. 270. The wrongful act of the trial court in neglecting or refusing to appoint a guardian *ad litem* cannot be the foundation of any equitable rights upon the part of the plaintiff, which had a right to act to procure the appointment by the court of a guardian *ad litem* of the insane defendant. *Campau* v. *Campau,* 19 Mich. 116.

There was, by the motion made in the trial court, no former adjudication. The motion made was denied presumptively because it was not made in time.

"Judicial shams, frauds and mockeries vitiate legal proceedings, even on collateral attack. Under the first rule of *res judicata, i. e.,* that the proceedings shall be *coram judice,* we have to every claim for an adjudication a challenge of every test by which a judgment is viewed on collateral attack, on motion in arrest of judgment or for judgment *non obstante veredicto.* * * * The test is the ground of the general demurrer, which is never waived. * * * It may be raised at any time, by any person and in any way. It may be read into the assignment of errors, and so may all the tests of a record upon collateral attack. The court charged with such lasting blights as countenancing the waiver of pleadings, or the mandatory record, which is the web and woof of *res judicata*—former jeopardy, estoppel of record and of other subjects within the scheme of

government should be called to an early accounting." 1 Hughes' Procedure, § 123, pp. 224, 225.

Yet, it is here contended the trial court could, and this court may, uphold the decree of the trial court which disregarded the positive provisions of a mandatory statute prescribing essential procedure.

The question of former adjudication is not here. The decree should be held void and subject to collateral attack because of the trial court's disregard of the positive provisions of the mandatory statute which prohibits further proceedings after service of · summons on an insane defendant until a guardian *ad litem* is appointed.

(1) There was no former adjudication on the trial court's overruling the motion to set aside the decree because such motion was, under the rules, made too late.

(2) The question here is one of orderly procedure in accordance with the statutory rule enacted to preserve the obvious policy of the common law, in order that an insane defendant's rights may be adequately protected. No attempt was made to follow the provisions of the statute in the matter of appointing someone *sui juris,* whose duty it would be to protect the rights of the defendant. Such rights were not properly before the court for it to adjudicate upon. They were not protected, and the decree entered should be held void and subject to collateral attack—of no effect as to the insane defendant's rights. In view of the rules of this court, the trial court was, perhaps, warranted in denying the motion made on behalf of defendant, on account of the lapse of time; but, where there was and is no remedy by motion, the question could properly be raised by a bill in equity.

(3) If the application for relief to this court is not correct, such relief as the insane defendant is

entitled to should be granted. It is the clear duty of this court on its own motion to direct that the decree of the trial court be set aside, and the cause remanded to that court to appoint a guardian *ad litem* of the insane defendant, with instructions to protect defendant's rights by all available legal remedies.

(4) Under the practice of this court prior to the enactment of 3 Comp. Laws 1929, § 14038, there are holdings that by service of summons upon an insane defendant the court acquires jurisdiction. But, to prevent trial courts from riding roughshod over the rights of insane defendants, the statute was enacted which prohibited the trial court from taking further action and proceedings in violation of the statute. Proceedings, taken in violation of the statute which measures the power and authority of the court, are void and of no effect. The only object and purpose of the service of summons upon an insane defendant is that the rights of such insane defendant may be protected. The statute provides that before any decree may be taken, a guardian *ad litem* shall be appointed to represent the rights of such insane defendant. Service of process upon an insane defendant may confer jurisdiction to take further action looking toward the protection of the rights of such defendant by enabling them to be presented to the court by a guardian *ad litem*. But service of summons, so far as it enables an insane defendant to appear and defend, is a useless proceeding—a hollow mockery. It amounts to saying to the insane defendant "You shall defend," and, at the same time, saying "You cannot defend."

(5) The rights of the insane defendant were never before the court for adjudication. Such decree is subject to collateral attack, and, being void for want of jurisdiction, may be disregarded and may not be

enforced. But it is contended that this is a matter of former adjudication. There was no such proof of former adjudication as concludes the rights of the defendant. That the trial court twice erroneously held it had jurisdiction does not strengthen its position. It was the duty of the trial court, upon the fact that defendant was insane being brought before it, to set aside any proceedings which it may have taken in violation of the provisions of the statute. The motion made by the defendant's guardian may be held to have been made too late.

(6) It may be contended that one court in chancery cannot question the action of another, that bills of review are abolished, and it is clear the time for making the motion which was made on behalf of the defendant had elapsed. But, neither the statutes nor the rules of court may provide for taking the property of the defendant without due process of law, nor may it be said that the object of judicial procedure is to perpetuate wrong. *State, ex rel. Happel,* v. *District Court, supra.*

(7) Either,

(a) This court should on its own motion direct the trial court to set aside the decree made and appoint a guardian *ad litem* to represent the rights of the insane defendant, and proceed from that point in accordance with the rules and practice of this court; or

(b) It should suggest to the plaintiff's guardian *ad litem* he may apply for a delayed appeal from the decree entered in the foreclosure case; and, if such application should be made, it would be the clear duty of this court to grant such application; or

(c) It should, on its own motion by virtue of its superintending control over all inferior courts, issue its writ of prohibition to the trial court against

proceeding further in the foreclosure case until its decree is set aside and a guardian *ad litem* appointed for defendant, who shall be directed to defend in her behalf; or

(d) An injunction or stay order should issue from this court perpetually staying and enjoining the enforcement of the final decree of the court in the foreclosure suit until it is set aside and a guardian *ad litem* of defendant appointed, who is not only permitted, but directed, to defend on behalf of defendant.

Section 14100, 3 Comp. Laws 1929, provides that service of process upon an insane defendant confined in an insane asylum shall be made by the medical superintendent in charge thereof or by someone designated by him. After service of process in any suit upon the defendant who is insane, said suit shall be defended by the guardian of the estate of such insane defendant, if there be one; "otherwise, such suit shall not be further prosecuted until a guardian *ad litem* for such person shall be appointed." 3 Comp. Laws 1929, § 14038.

When the foreclosure suit was instituted, defendant had no general guardian, and no guardian *ad litem* was appointed to represent her and her interests.

The statutes above mentioned are plain and there is no room for their judicial construction.

"The language is clear and unequivocal, and, therefore, not open to construction." *Gray* v. *Brown & Sehler Co.,* 200 Mich. 177.

If a judicial officer does that which he is prohibited by statute from doing, is the result the same as if he were expressly authorized by statute to perform the act? An express prohibition is not an implied authorization.

"The judicial power does not extend to setting aside the plain terms of the law." *Schild* v. *Railroad Co.*, 200 Mich. 614.

The trial court, after the return of process served on the insane person in the asylum, had no jurisdiction to permit the further prosecution of the foreclosure suit until a guardian *ad litem* of defendant had been appointed. All judicial action by the trial court in violation of the positive prohibitions of the mandatory statute was void.

The decree of the trial court should be reversed and set aside, with costs, and such court directed to appoint a guardian *ad litem* for the defendant in the foreclosure suit, or permit the guardian *ad litem* who has been already appointed to appear, answer and defend in accordance with the rules and practice of the court.

BUSHNELL and EDWARD M. SHARPE, JJ., concurred with POTTER, C. J.