In the Matter of the Estate of Orrin Hiscock, Deceased. Appeal of Melvin Hiscock from Decision of Commissioners on Claims.

*Estates of deceased persons—Statute of limitations—" Mutual and open account current" defined.*

1. The statute of limitations (How. Stat. § 8717), which excepts certain accounts from its operation, is confined to such as make "a mutual and open account current." It must be mutual as well as open.

2. A "mutual and open account current" means a course of dealing where each party furnishes credit to the other on the reliance that upon settlement the accounts will be allowed, so that one will reduce the balance due on the other. Buswell, Lim. chap. 4, § 5; *Kimball v. Kimball*, 16 Mich. 218; *Campbell v. White*, 22 Id. 178; *White v. Campbell*, 25 Id. 463, and notes; *Sperry v. Moore's Estate,* 42 Id. 354.

Error to Lenawee. (Lane, J.)   Argued January 30, 1890.   Decided February 20, 1890.

Appeal from allowance of claim against the estate of a deceased person.   Claim disallowed, and no new trial granted.   The facts are stated in the opinion.

*Westerman & Westerman*, for contestant and appellant.

*Weaver & Bean,* for claimant.

Campbell, J.   A claim was allowed to Abraham Hanford against the estate of deceased, which consisted of a series of charges, beginning in 1871.   Orrin Hiscock died in March, 1886.   Down to the close of 1876 all the debit items were for board of Hiscock and wife, except one for a nurse, and $152 for funeral expenses, and $225 money lent.   Mrs. Hiscock died December 1, 1875, and Orrin Hiscock is charged for no board since November, 1876.

Previous to that time there are two credits for "cash on board," and no others. In 1878 and 1879 there are two unexplained credits of cash. There are no other items on either side, until 1883 and 1884. Mrs. Hiscock went to board with Hanford in June, 1871. Mr. Hiscock went in September, 1871. The only verbal testimony as to the rate of board is that of a daughter of Hanford, that after Mr. Hiscock's arrival, in the fall of 1871, Mr. Hiscock agreed to pay $2.50 a week for the board and care of each.

Mr. Hanford was allowed to prove his claim by what is claimed to be a book of original entries. He produced two witnesses, who swore to having settled labor accounts with him, and found the book correct. The undertaker swore that Hanford ordered all that he furnished for the funeral, and paid for it. A witness testified to an admis_sion by decedent, some time in 1875, that he had borrowed $225 of Hanford. This appears in the account as of January 18, 1876, by a charge evidently not then entered. There was proof of borrowing $25, in 1884, and of payment of a small note of Hiscock in October, 1884, but no proof that it was at Hiscock's request. There is also testimony in regard to getting a cow, which is a little obscure, and some other matters in 1884, not fully explained. The account was allowed for the full balance claimed by Hanford, going back to the beginning. Most of it depended on the accounts as entered.

Two main objections are made:

1. That the items through 1876 are barred by limitation.

2. That the book-account was not admissible, and that the accounts should have been proved.

Both objections are well founded. The statute of limitations, which excepts certain accounts from its operation, is confined to such as make "a mutual and open

account current." It must be mutual as well as open. This, according to the consistent course of authority, means a course of dealing where each party furnishes credit to the other on the reliance that upon settlement the accounts will be allowed, so that one will reduce the balance due on the other. The doctrine is very well set forth with the decisions in Buswell on Limitations, c. 4, § 5; and is recognized in *Kimball v. Kimball*, 16 Mich. 218; and *Campbell v. White*, 22 Id. 178; *White v. Campbell*, 25 Id. 463, and notes; *Sperry v. Moore's Estate*, 42 Id. 354 (4 N. W. Rep. 13).

There is nothing in the record to indicate that Hiscock ever had any account against Hanford, or made any claim against him, unless the credit for wood in April, 1884, can be so regarded. That is later than any account or claim against Hiscock, and could be no evidence of mutual dealings at any earlier date; and, even if the unexplained credits in 1878 and 1879 could be regarded as such payments as would save the case from the statute at the time, more than six years elapsed after the last of them before Hiscock's death. Of course, no one can keep a cause of action alive by credits, unless actually paid on account. There is nothing which would justify a ruling that anything dating back of the cow trade, in 1883, is not finally closed and barred. In the subsequent dealings the credits exceed the charges, and there is no occasion to consider the other questions involved. It is at least doubtful whether there is anything in the case which would bring the claimant's so-called "book of accounts" within the rule which makes such books admissible; but inasmuch as no case is proven at all, this becomes unimportant.

The judgment must be reversed and the claim disallowed. As it is bad on its face, there should be no new

trial. The appellant is entitled to costs of all the courts.

CHAMPLIN, C. J., MORSE and GRANT, JJ., concurred. LONG, J., did not sit.