SEYBURN, KAHN, GINN, BESS, DEITCH AND SERLIN, PC v BAKSHI

Docket No. 272903. Submitted November 14, 2007, at Detroit. Decided
April 1, 2008, at 9:25 a.m. Leave to appeal sought.

The law firm of Seyburn, Kahn, Ginn, Bess, Deitch and Serlin, P.C.,
after successfully defending against a legal-malpractice action by
former client Kirit Bakshi, brought an action in the Oakland
Circuit Court against Bakshi, alleging breach of contract and
seeking payment of outstanding legal fees. The defendant moved
for summary disposition, arguing that the claim is barred by the
statute of limitations because it was brought more than six years
after the defendant last paid for legal services while an appeal in
which the plaintiff represented the defendant was pending in the
Court of Appeals. The court, Gene Schnelz, J., granted the motion.
The Court of Appeals, KELLY, P.J., and HOEKSTRA, J. (WHITE, J.,
concurring in part and dissenting in part), reversed, holding that
the claim is timely because it was filed within six years of when it
accrued, i.e., when the plaintiff, at the defendant's request, pro-
vided the defendant with copies of documents in his litigation file.
Unpublished opinion per curiam of the Court of Appeals, issued
March 13, 2003 (Docket No. 238697). The Supreme Court, in lieu
of granting leave, vacated the Court of Appeals judgment and
remanded the case to the trial court for further proceedings. The
Supreme Court agreed with Judge WHITE that the trial court
should determine whether there is a proper action on an open
account and whether the plaintiff could ethically and legally
charge the defendant for copies of his litigation file. 469 Mich 958
(2003). On remand, the trial court entered a judgment for the
plaintiff, concluding that the plaintiff properly charged the defen-
dant for the copies, that the plaintiff's claim accrued on the date
the plaintiff provided the copies to the defendant, and that the
claim was timely filed within six years of accrual. The defendant
appealed.

The Court of Appeals held:

The plaintiff's claim is time-barred because it accrued when the
Court of Appeals allowed the plaintiff to withdraw as the defen-
dant's counsel, and the plaintiff's activities associated with copy-

ing and returning the defendant's litigation file did not extend the accrual date under MCL 600.5807(7), now MCL 600.5807(8).

Reversed and remanded for entry of judgment in favor of the defendant.

JANSEN, J., concurring, stated that an attorney-client relationship typically terminates at the same time that a potential legal-malpractice claim accrues. In general, a legal-malpractice claim accrues on the attorney's last day of professional service in the matter out of which the claim for malpractice arose, or upon completion of a specific legal service that the lawyer was retained to perform. In this case, the attorney-client relationship terminated when the plaintiff withdrew as the defendant's counsel. Follow-up and incidental activities, such as copying and forwarding a client's file, do not serve to extend an otherwise terminated attorney-client relationship.

ATTORNEY AND CLIENT — BREACH OF CONTRACT — UNPAID FEES — ACCRUAL OF CLAIMS.

An attorney's cause of action for breach of contract against his or her former client, for fees arising out of representation in litigation, accrues on the date of the termination of the attorney-client relationship; that relationship is not extended, and the accrual date is not postponed, merely because the attorney rendered a compensable, but ministerial, service like returning the client's litigation file.

*Seyburn, Kahn, Ginn, Bess, Deitch and Serlin, P.C.* (by *Barry R. Powers*), for the plaintiff.

Kirit Bakshi *in propria persona.*

Before: SAAD, P.J., and JANSEN and BECKERING, JJ.

SAAD, P.J. Defendant Kirit Bakshi appeals from a judgment awarding plaintiff law firm Seyburn, Kahn, Ginn, Bess, Deitch and Serlin, P.C. (Seyburn), $573,168.07 in this breach of contract action to recover unpaid legal fees. For the reasons stated below, we reverse the order of judgment of the trial court and remand for entry of judgment for Bakshi.

## I. NATURE OF THE CASE

Seyburn says that Bakshi owes it legal fees for litigation it handled for Bakshi and his corporations from 1989 to 1993. Bakshi was ultimately unsuccessful in this litigation.[1] In 1992, Bakshi refused to pay the remaining fees of $50,603, in part because he says Seyburn wrongly failed to credit the full amount of his payments.[2] Bakshi also says he became dissatisfied with Seyburn's performance in the underlying litigation. This dispute between client and counsel resulted in Seyburn's motion in this Court to withdraw as counsel in 1993, while Bakshi's appeal of the unsuccessful litigation was pending in this Court. This Court granted Seyburn's motion to withdraw on September 30, 1993. Thereafter, Bakshi asked Seyburn for his litigation file, and, as of October 12, 1993, Seyburn reviewed, copied, and sent relevant documents to Bakshi and billed him $182 for the review and $250 for photocopying, bringing Bakshi's outstanding balance to $55,723. Bakshi's dissatisfaction with Seyburn's performance also led him to file a malpractice action in 1995, but this action also was unsuccessful.[3]

Because Seyburn filed this suit on October 9, 1999, the dispositive question is whether its breach of contract claim is (1) time-barred by the six-year statute of limitations because its claim accrued on September 30, 1993, when this Court granted Seyburn's motion to

---

[1] This Court affirmed the trial court's dismissal of his action in *Interface Electronics v Minicomp Private Ltd*, unpublished opinion per curiam of the Court of Appeals, issued October 10, 1994 (Docket No. 146262).

[2] Bakshi asserts in his brief that at the time of his refusal to pay the $50,603, he had already paid Seyburn $92,000 in legal fees.

[3] See *Bakshi v Gold*, unpublished opinion per curiam of the Court of Appeals, issued August 10, 2001 (Docket No. 220867).

withdraw as counsel, or (2) timely because its cause of
action accrued on October 12, 1993, when Seyburn
reviewed and copied Bakshi's file.

We hold that Seyburn's contract claim is time-barred
because it accrued on September 30, 1993, when this
Court granted Seyburn the right to withdraw from its
representation of Bakshi in the underlying litigation,
and we further hold that Seyburn's activities associated
with copying and returning Bakshi's litigation file do
not extend the accrual date under MCL 600.5807(7)
(now MCL 600.5807[8]).

## II. FACTS AND PROCEDURE

This case has a lengthy factual and procedural his-
tory. In 1989, Bakshi retained Seyburn to represent him
and his two corporations[4] in a legal action (underlying
litigation) and other legal matters. Bakshi was unsuc-
cessful in the underlying litigation: the trial court
dismissed the action on October 17, 1991, and this
Court affirmed the trial court's judgment. *Interface
Electronics v Minicomp Private Ltd*, unpublished opin-
ion per curiam of the Court of Appeals, issued October
10, 1994 (Docket No. 146262). (Circuit court records
indicate that Seyburn also represented Bakshi in at
least one other lawsuit in the circuit court while the
*Interface Electronics* appeal was pending.)

Bakshi ceased paying Seyburn's legal bills in Novem-
ber 1992, while the appeal in the underlying litigation
was pending. At that time, Bakshi had already paid
$92,000, and his remaining balance was $50,603. Ap-
parently, his refusal to pay initially arose from a dispute

---

[4] Although Bakshi's corporations also were Seyburn's clients in the
underlying litigation and parties in the underlying litigation and mal-
practice action, for ease of reference we refer only to Bakshi.

with Seyburn over an amount he believed should have been credited to the account. The parties continued to dispute this matter over the next several months. On March 3, 1993, Seyburn argued a motion in the trial court on Bakshi's behalf. This was the last date on which Seyburn performed a service for Bakshi that was not related to the dissolution of the attorney-client relationship. On April 27, 1993, Seyburn drafted a motion to withdraw as Bakshi's counsel and charged him for that task.

On June 8, 1993, Bakshi notified Seyburn that he believed that "our attorney client relationship must be terminated or substantially modified." He gave Seyburn two "options": Seyburn could refund the fees already paid and enable Bakshi to retain substitute counsel with the refunded money, or Seyburn could refund 75 percent of the fees paid, file an appeal, and withdraw. Bakshi also stated that he had no financial resources to pay for the litigation.

On July 30, 1993, Seyburn moved in this Court to withdraw as Bakshi's counsel. It stated that Bakshi was "indebted to counsel for fees and costs incurred at the trial court level as well as fees associated with the appeal," and that he "has indicated that it is not willing to pay the outstanding fees or costs." Seyburn also alleged in the withdrawal motion that the attorney-client relationship between itself and Bakshi was "subject to irreconcilable differences and has broken down to such an extent that counsel can not effectively represent [Bakshi's] interest in this appeal." This Court granted the motion to withdraw on September 30, 1993.[5]

In October 1993, Bakshi requested his file from Seyburn. Seyburn's paralegal reviewed the file to deter-

---

[5] This Court's records show that substitute counsel for Bakshi entered an appearance on February 22, 1994.

mine which materials would be provided to Bakshi. On
November 12, 1993, Seyburn sent Bakshi a bill, which
included charges for those activities, as follows:

> 10/10/93 Review file to determine what to keep and
> what to return to client; draft memorandum
> regarding same;
>
> 10/11/93 Complete review of file to determine what to
> send back to client; copy pleading indexes and
> correspondence;
>
> 10/12/93 Review and revise memorandum regarding
> file . . . .

Seyburn charged Bakshi $182 for these activities, plus
$250 for photocopying. Bakshi did not pay this bill, and
the unpaid balance on Bakshi's account was then
$55,723.

In 1995, Bakshi brought a legal malpractice action
against Seyburn, claiming, among other things, that he
should be relieved of his obligation to pay Seyburn for
negligently performed legal services in the prior unsuc-
cessful litigation. In a motion for summary disposition,
Seyburn argued that Bakshi's action was barred in part
by the two-year statute of limitations for malpractice
claims, MCL 600.5805(5) (now MCL 600.5805[6]). Con-
trary to the position that it takes in this litigation,
Seyburn stated in an affidavit that it last performed
legal services for Bakshi on March 3, 1993, and that it
"discontinued" providing legal services to Bakshi on
April 27, 1993 (the latter date refers to the date it
drafted its motion to withdraw as counsel). The trial
court commented in its opinion that "[Seyburn was]
hired for the particular purpose of representing [Bak-
shi] and did not discontinue serving [Bakshi] with
respect to those matters until October 1993 . . . ." The
trial court dismissed the malpractice action in 1999,
and this Court affirmed the dismissal in *Bakshi v Gold*,

unpublished opinion per curiam of the Court of Appeals, issued August 10, 2001 (Docket No. 220867). Our Supreme Court denied leave to appeal. *Bakshi v Gold*, 467 Mich 851 (2002).

Seyburn filed its complaint in the instant action for unpaid legal fees on October 9, 1999, while Bakshi's malpractice action was pending. Bakshi moved for summary disposition pursuant to MCR 2.116(C)(7), arguing that the six-year statute of limitations, MCL 600.5807(7) (now MCL 600.5807[8]), had expired. He maintained that Seyburn's claim accrued in November 1992, when he last paid for legal services. In response, again contrary to the position it took in the malpractice case, Seyburn argued that it last performed legal services on October 12, 1993, when it complied with Bakshi's request to be provided with a copy of his file. It asserted that the trial court in the malpractice action had already determined that its services ended in October 1993.

In 2001, the trial court granted Bakshi's motion for summary disposition based on the statute of limitations, and held that Seyburn's action accrued in 1992, when Bakshi stopped paying Seyburn's legal fees. Seyburn appealed that decision to this Court, which, in a split decision, reversed the trial court's decision. The majority agreed with Seyburn that its action was timely filed because its claim accrued on October 12, 1993, the last date it performed a properly billable service. *Seyburn, Kahn, Ginn, Bess, Deitch and Serlin, PC v Bakshi,* unpublished opinion per curiam of the Court of Appeals, issued March 13, 2003 (Docket No. 238697). One judge, however, issued a separate partially dissenting opinion, which agreed with the majority's conclusion that summary disposition was improperly granted to Bakshi. However, that judge wrote that the matter should be remanded to the trial court to determine

whether "there was a proper action on an open account" and, if so, the date of the last proper billable entry. In this regard, the partially dissenting judge opined that the trial court should have considered whether Seyburn could ethically and legally charge Bakshi for the tasks it performed in October 1993 in relation to his request for a copy of his file. However, she also commented that the October dates were not necessarily dispositive of the question of when Seyburn's claim accrued. *Id.*, slip op at 1-2 (WHITE, J., concurring in part and dissenting in part).

Bakshi thereafter filed an application for leave to appeal in the Michigan Supreme Court. In lieu of granting leave to appeal, the Supreme Court vacated this Court's judgment and remanded the case to the trial court for further proceedings for the reasons stated in the partially dissenting opinion. *Seyburn, Kahn, Ginn, Bess, Deitch and Serlin, PC v Bakshi,* 469 Mich 958 (2003).

On remand, the trial court held a hearing on the statue of limitations issue. It determined that Seyburn performed the additional work in October 1993, at Bakshi's request and for his benefit, and that Seyburn could ethically charge Bakshi for those services. From this, the court reasoned that the limitations period did not begin to run until October 12, 1993, and thus held that Seyburn's action, filed on October 9, 1999, was timely filed within the six-year period of limitations. MCL 600.5807(8) (formerly MCL 600.5807[7]). Thus, the trial court determined that Bakshi was liable for legal fees of $62,763, and that Seyburn was entitled to interest of $510,405.07, as of August 16, 2006.[6] It issued judgment ordering Bakshi to pay Seyburn $573,168.07.

_____

[6] Seyburn charged 18 percent annual interest on unpaid balances; thus, Bakshi's outstanding balance grew from $62,763 in 1993 to $573,168 in 2006.

III. ANALYSIS

We hold that the critical date for determining when Seyburn's claim accrued is the date that the attorney-client relationship was terminated, September 30, 1993, when our Court granted Seyburn's July 30, 1993, motion to withdraw. When the termination of an attorney-client relationship coincides with the last date that the attorney provided services for the client, the attorney's claim for unpaid legal fees accrues on that date. *In re Dei's Estate*, 293 Mich 651, 656-658; 292 NW 513 (1940). However, when the date of termination of the relationship is not the same as, but instead occurs after, the date of the last services rendered, the question of the proper accrual date appears to be an issue of first impression under Michigan law. We hold that in the litigation context, like the situation here, the limitations period begins when the attorney-client relationship is, in fact, terminated.[7]

Our Supreme Court has held that an attorney's claim for unpaid legal fees accrues on the last date that the attorney performed services for the client.[8] The Court determined that there was a mutual and open account current pursuant to 1929 CL 13977 (now codified as MCL 600.5831). However, in *Dei's Estate*, there was no question that the end of the attorney's services coincided with the termination of the attorney-client relationship. Accordingly, the Supreme Court approached the issue as a general question regarding the collection of an open account and did not focus on the nature of the attorney-client relationship. Moreover, our Supreme Court did not address whether the outcome

[7] The question whether a claim is barred by a statute of limitations is a question of law that this Court reviews de novo. *Scherer v Hellstrom*, 270 Mich App 458, 461; 716 NW2d 307 (2006).

[8] *In re Dei's Estate, supra*, 293 Mich at 656-658.

would be different if the attorney-client relationship did not end on the last date of billable service.

In the litigation context, other jurisdictions have held that when an attorney ceases to perform services for the client, but the attorney-client relationship is not legally terminated until a later date, the date of the termination of the attorney-client relationship, and not the last date of services, is the date that the attorney's cause of action for unpaid legal fees accrues. 60 ALR 2d, §§ 1, 2, pp 1008, 1010. Of these cases, there is one, *Pellettieri, Rabstein & Altman v Protopapas*, 383 NJ Super 142, 145; 890 A2d 1022 (2006), whose reasoning we find particularly persuasive. In *Pellettieri*, the plaintiff attorney represented the defendant client in divorce and bankruptcy proceedings beginning in 1995. The parties entered into a retainer agreement for the divorce matter, which provided that the plaintiff would bill the defendant every 60 days for services rendered, and that the defendant would be responsible for the entire amount charged, subject to 12 percent annual interest for amounts not paid within 30 days of the billing. The plaintiff charged the defendant a flat fee for the bankruptcy representation pursuant to federal law, although the parties entered into a supplemental retainer agreement related to a contested matter that the defendant's wife filed in the bankruptcy action. *Id.* at 145-146. The defendant failed to keep up with his payments on the periodic billings. In 1996, he agreed to pay $2,000 each month toward his unpaid balance, but he failed to comply with this agreement. The plaintiff warned him that it would terminate its services if the payments were not made. *Id.* at 146-147. In 1997, the plaintiff notified the defendant that it would move to withdraw as counsel unless the defendant agreed to a substitution of counsel. The defendant agreed to the substitution,

and the plaintiff was permitted to withdraw in June 1997, before the divorce was entered. *Id.* at 148.

The plaintiff brought its action for unpaid legal fees in March 2003. The trial court determined that the six-year period of limitations began to run when the defendant breached the agreement by failing to pay the plaintiff's periodic billings, and concluded that the action was timely only with respect to charges made in the six-year period before the plaintiff filed its action. *Id.* at 150. The New Jersey Superior Court, Appellate Division, disagreed, and reasoned as follows:

> Analyzing the retainer agreement, the judge mistakenly relied on general contract principles to find that the plaintiff's cause of action accrued when defendant failed to pay the due periodic bills. The statement in the agreement reserving the right to seek termination for non-payment was not equivalent to a commercial installment sales contract, which permits a creditor immediate redress. Unlike the general commercial transaction . . . where the "critical point" for the determination of accrual of the cause of action is the date when the payment of the invoice becomes due, an attorney's cause of action does not accrue based upon non-payment alone. More is needed. *Specifically, absent completion of services under a retainer agreement, the attorney-client relationship must be terminated before plaintiff's cause of action accrues.* [*Id.* at 150-151 (emphasis added).]

The court ruled that an attorney's claim for unpaid legal bills could not be evaluated according to ordinary commercial-law principles because attorneys are bound by ethical constraints that preclude them from unilaterally severing an attorney-client relationship. It explained:

> While a lawyer must seek client approval to withdraw, the client may discharge the attorney at will. Moreover, depending on the timing of the request, there is no guar-

antee that an attorney will be permitted to withdraw even if there is client consent and grounds to do so under the Rules of Professional Conduct. *R* 5:3-5(d) provides that after the fixing of a trial date, or prior to the fixing of such date where the client does not consent, "an attorney may withdraw from the action only by leave of court on motion on notice to all parties." The rule goes on to outline several circumstances that the court should consider in deciding the motion. *A lawyer's inability to sue a client before either obtaining consent of the client or leave of court to withdraw mandates a tolling of the statute. Stated another way, an attorney's cause of action to seek unpaid fees arising from a retainer agreement permitting periodic hourly billing does not arise until the matter is concluded or the attorney-client relationship is terminated, whichever occurs first. [Id.* at 152-153 (emphasis added).]

We agree with *Pellettieri* and hold that an attorney's cause of action for breach of contract against his or her client, for fees arising out of representation in litigation, accrues on the date of the termination of the attorney-client relationship. If, as in *Pellettieri,* and as here, that relationship continues formally and legally beyond the last date of services performed, the termination date, and not the last date of service, is the dispositive date for the accrual of the attorney's claim for fees. The attorney-client relationship is not extended (and the accrual date is not postponed) merely because the attorney renders a compensable, but ministerial, service like returning the client's file, as occurred in this case. See *Bauer v Ferriby & Houston, PC,* 235 Mich App 536, 538-539; 599 NW2d 493 (1999).

Moreover, we agree with the reasoning underlying the analysis in *Pellettieri* because it is informed by the unique status of the attorney-client relationship that distinguishes that professional relationship from other forms of commercial contractual relationships. Also, the holding in *Pellettieri* is consistent with the principle

applied in litigation that an attorney's representation of
a client continues until the client or the court relieves
that attorney of the obligation. *Mitchell v Dougherty*,
249 Mich App 668, 683; 644 NW2d 391 (2002). Further,
*Pellettieri*'s rationale reflects the ethical principles that
prohibit an attorney from unilaterally terminating his
or her representation of a client at will, and also from
suing the client for unpaid fees until the representation
is terminated. Clearly, an attorney is not free to with-
draw from representation of a client unless withdrawal
can be accomplished without material adverse effect on
the client's interests. MRPC 1.16(b). See *Friedman v
Dozorc*, 412 Mich 1, 57 n 60; 312 NW2d 585 (1981)
("[a]n attorney's ability to withdraw from representa-
tion is limited if the client objects"); see also *Lipton v
Boesky*, 110 Mich App 589, 599; 313 NW2d 163 (1981)
("[A]n attorney owes a duty of care to his client until he
is discharged by the client or the court."). Furthermore,
an attorney may not ethically sue a client to recover
unpaid legal fees while the attorney represents the
client. Such an action would certainly violate MRPC
1.7(b), which prohibits an attorney from representing a
client if the representation of that client "may be
materially limited . . . by the lawyer's own interests."[9]
See also State Bar of Michigan Informal Ethics Opinion
RI-159 (April 13, 1993), which states that an attorney
who represents a client in a divorce action may not sue
the client for unpaid fees before the action is resolved,
and also that the assignor of an attorney's claim for
unpaid fees may not sue the client until the represen-
tation is completed. The court in *Pellettieri, supra,*
correctly recognized that these prudential and ethical

---

[9] MRPC 1.7(b) provides an exception to this restriction where the
attorney reasonably believes that the representation will not be adversely
affected and the client consents, but these conditions would not be
satisfied in any realistic scenario.

considerations toll the period of limitations for an action to collect fees until the representation period has ended. Accordingly, we agree that in the litigation context, where, as here, legal services are no longer being provided and a dispute over fees exists, an attorney's action for unpaid legal fees accrues on the date a court orders the termination of the attorney-client relationship.

Seyburn urges this Court to hold that its cause of action did not accrue until October 12, 1999, the last date that it performed a service for Bakshi. We reject this proposition and instead hold that the tasks Seyburn performed in October 1993 do not constitute continued representation for purposes of determining the end of the attorney-client relationship. In *Bauer, supra*, 235 Mich App at 539, this Court stated:

> Some of a lawyer's duties to a client survive the termination of the attorney-client relationship, most notably the general obligations to keep client confidences and to refrain from using information obtained in the course of representation against the former client's interests.... Sound public policy would likewise encourage a conscientious lawyer to stand ever prepared to advise a former client of changes in the law bearing on the matter of representation, *to make a former client's file available if the former client had need of it* .... To hold that such follow-up activities attendant to otherwise completed matters of representation necessarily extends the period of service to the client would give providers of legal services a powerful disincentive to cooperate with a former client who needs such attention. We conclude that the proper inquiry is whether the new activities occur pursuant to a current, as opposed to a former, attorney-client relationship. [Emphasis added.]

Clearly, Seyburn did not extend the period of representation into October 1993 by performing the ministerial task of providing Bakshi with a copy of his file. Indeed, Seyburn itself acknowledged this in an affidavit

it submitted to the trial court in Bakshi's malpractice action against Seyburn. One of Seyburn's partners averred in his affidavit that "[t]he last legal services that [Seyburn] performed for [Bakshi] with regard to any matters was on March 3, 1993, and [Seyburn] discontinued providing legal services to [Bakshi] on April 27, 1993." Seyburn readily acknowledged in this affidavit that reviewing and copying a file would not extend the period of representation for purposes of determining the accrual date for a cause of action for legal malpractice. Likewise, such activity does not extend the period of representation for purposes of this action to collect unpaid fees.[10]

The trial court erroneously assumed that the attorney-client relationship ended on the last date that the attorney rendered any services for which it could legally charge payment. Acting on this assumption, it determined that Seyburn's services to Bakshi ended on October 12, 1993. The trial court concluded that Seyburn permissibly billed Bakshi for reviewing and copying his file because State Bar of Michigan Ethics Opinion R-19 (August 4, 2000) provides that a "lawyer may

---

[10] The trial court was also required on remand to consider whether this case involved an open account. MCL 600.5831 provides that "[i]n actions brought to recover the balance due upon a mutual and open account current, the claim accrues at the time of the last item proved in the account." Payments on an account for services are sufficient to render it an open and mutual account for purposes of the statute of limitations. *Payne v Walker*, 26 Mich 60, 62 (1872). We acknowledge that our Supreme Court previously applied the predecessor statute to determine the accrual date for an attorney's cause of action for unpaid fees. *Dei's Estate, supra*, 293 Mich at 656-658. However, the law specifically governing the termination of the attorney-client relationship takes precedence over a statute of general applicability. Here, the application of MCL 600.5831 would create the anomaly of extending the accrual date of the attorney's cause of action beyond the termination of the attorney-client relationship, merely because the attorney performed the necessary tasks of copying documents to give to the former client.

properly charge for the service of searching the files to provide the client access to information and for the reproduction or other methods of access to such information," although it "may not charge for the return of that portion of the file that is the property of the client."[11]

The trial court erred in reasoning that because Seyburn could ethically charge for this service, the attorney-client relationship ended on this date for purposes of determining the accrual date. Clearly, the question of when Seyburn's claim accrued does not hinge on the propriety of the October charges.

Bakshi's obligations to Seyburn arose from the attorney-client relationship they established when Bakshi retained the firm to represent him and his corporations in litigation, and the period of limitations for the action for unpaid fees began to run when that relationship was terminated by this Court on September 30, 1993.

We reverse the trial court's order of judgment and remand for entry of judgment in favor of defendant-appellant, Kirit Bakshi, consistent with this opinion. We do not retain jurisdiction.

BECKERING, J., concurred.

JANSEN, J. (*concurring*). I fully concur in the result reached by the majority. I write separately, however,

---

[11] Bakshi maintains that Ethics Opinion R-19 does not govern these circumstances, because it was not decided until after Seyburn attempted to bill him for activities related to copying the file. He argues that prior ethics opinions, issued before October 1993, supported his position that the billing was improper. Bakshi's argument raises questions concerning the retroactivity of ethics opinions and the application of prior opinions to the October 1993 billing. However, it is unnecessary to resolve these questions because the salient question is not whether the October 1993 billings were proper and permissible, but whether they extended the period of the attorney-client relationship.

because I would decide this appeal in a less complex manner. An attorney-client relationship typically terminates at the same time that a potential legal-malpractice claim accrues. In general, "a legal malpractice claim accrues on the attorney's 'last day of professional service' in the matter out of which the claim for malpractice arose," or " 'upon completion of a specific legal service that the lawyer was retained to perform.' " *Kloian v Schwartz*, 272 Mich App 232, 238; 725 NW2d 671 (2006) (citations omitted). "In general, once an attorney has discontinued serving the plaintiff-client, additional acts by the attorney will not delay or postpone the accrual of a legal malpractice claim." *Id.* at 238 n 2. In other words, follow-up and incidental activities—such as copying and forwarding a client's file—do not serve to extend an otherwise terminated attorney-client relationship. See *Bauer v Ferriby & Houston, PC*, 235 Mich App 536, 539; 599 NW2d 493 (1999).

The attorney-client relationship in this case terminated when plaintiff withdrew on September 30, 1993, see *Kloian, supra* at 238, and plaintiff's subsequent ministerial acts of copying and transmitting defendant's file did not extend the otherwise terminated professional relationship beyond that date, see *Bauer, supra* at 539. Consequently, plaintiff's contract-based cause of action for the recovery of attorney fees also accrued on September 30, 1993. See *Pellettieri, Rabstein & Altman v Protopapas*, 383 NJ Super 142, 149 n 7; 890 A2d 1022 (2006) (observing that "[t]he generally accepted rule is that an attorney's cause of action for legal fees accrues, for statute of limitation purposes, when the suit is completed or the attorney-client relationship is terminated, whichever happens first"); see also *Jenney v Airtek Corp*, 402 Mass 152, 154; 521 NE2d 388

(1988) (observing that "an attorney's cause of action for fees accrues no later than when his services terminate").

I would reverse and remand for entry of judgment in favor of defendant.