**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:     Justices:
Marilyn Kelly      Michael F. Cavanagh
                   Elizabeth A. Weaver
                   Maura D. Corrigan
                   Robert P. Young, Jr.
                   Stephen J. Markman
                   Diane M. Hathaway

FILED JULY 17, 2009

SEYBURN, KAHN, GINN, BESS, DEITCH
AND SERLIN, P.C.,

      Plaintiff-Appellant,

v                                                   No. 136436

KIRIT BAKSHI,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

WEAVER, J.

In this case we must decide the proper date of accrual in a breach of contract action for the recovery of unpaid legal fees. Specifically, this Court has been asked to consider whether the parties' obligations are governed by a contract or a mutual and open account current.[1] We also consider whether a claim by an attorney against a client for unpaid legal fees accrues on the date that the attorney-client relationship is terminated.

We conclude that the relationship between plaintiff and defendant is governed by the explicit terms of their contract and is not a mutual and open

---

[1] The term "mutual and open account current" comes directly from MCL 600.5831, which governs accrual for actions involving a mutual and open account.

1

account current.  We also hold that plaintiff's breach of contract claim to recover the unpaid legal fees under the original contract accrued on September 30, 1993, which is the date that the Court of Appeals granted the motion to terminate the attorney-client relationship.  In addition, we conclude that plaintiff's acts of reviewing, copying, and returning defendant's file do not extend the accrual date beyond the date that the attorney-client relationship was terminated.  Because plaintiff did not file this claim until October 8, 1999,[2] we hold that, pursuant to MCL 600.5807(8), the breach of contract action to recover the unpaid legal fees under the original contract is barred by the six-year statute of limitations.  Finally, we hold that the costs attributed to the file-review services effectively arose from a separate contract, and the claim for those costs was filed timely and is not outside the statute of limitations.

We therefore affirm the Court of Appeals in part, reverse in part, and remand to the trial court for entry of judgment in favor of plaintiff in the amount of $442, with no interest to be assessed under the contract.

## I.  Facts and Procedural History

The facts and procedural history of this case are quite extensive and were well set forth by the Court of Appeals as follows:

> In 1989, [defendant] Bakshi retained [plaintiff] Seyburn to represent him and his two corporations in a legal action (underlying

---

[2] The Court of Appeals opinion states that plaintiff filed this claim on October 9, 1999; however, the complaint in the Oakland Circuit Court file is date-stamped October 8, 1999.

litigation) and other legal matters. Bakshi was unsuccessful in the underlying litigation: the trial court dismissed the action on October 17, 1991, and [the Court of Appeals] affirmed the trial court's judgment. *Interface Electronics v Minicomp Private Ltd*, unpublished opinion per curiam of the Court of Appeals, issued October 10, 1994 (Docket No. 146262). (Circuit court records indicate that Seyburn also represented Bakshi in at least one other lawsuit in the circuit court while the *Interface Electronics* appeal was pending.)

Bakshi ceased paying Seyburn's legal bills in November 1992, while the appeal in the underlying litigation was pending. At that time, Bakshi had already paid $92,000, and his remaining balance was $50,603. Apparently, his refusal to pay initially arose from a dispute with Seyburn over an amount he believed should have been credited to the account. The parties continued to dispute this matter over the next several months. On March 3, 1993, Seyburn argued a motion in the trial court on Bakshi's behalf. This was the last date on which Seyburn performed a service for Bakshi that was not related to the dissolution of the attorney-client relationship. On April 27, 1993, Seyburn drafted a motion to withdraw as Bakshi's counsel and charged him for that task.

On June 8, 1993, Bakshi notified Seyburn that he believed that "our attorney client relationship must be terminated or substantially modified." He gave Seyburn two "options": Seyburn could refund the fees already paid and enable Bakshi to retain substitute counsel with the refunded money, or Seyburn could refund 75 percent of the fees paid, file an appeal, and withdraw. Bakshi also stated that he had no financial resources to pay for the litigation.

On July 30, 1993, Seyburn moved in [the Court of Appeals] to withdraw as Bakshi's counsel. It stated that Bakshi was "indebted to counsel for fees and costs incurred at the trial court level as well as fees associated with the appeal," and that he "has indicated that it [sic: he] is not willing to pay the outstanding fees or costs." Seyburn also alleged in the withdrawal motion that the attorney-client relationship between itself and Bakshi was "subject to irreconcilable differences and has broken down to such an extent that counsel can not effectively represent [Bakshi's] interest in this appeal." [The Court of Appeals] granted the motion to withdraw on September 30, 1993.

3

In October 1993, Bakshi requested his file from Seyburn. Seyburn's paralegal reviewed the file to determine which materials would be provided to Bakshi. On November 12, 1993, Seyburn sent Bakshi a bill, which included charges for those activities, as follows:

> 10/10/93  Review file to determine what to keep and what to return to client; draft memorandum regarding same;
>
> 10/11/93  Complete review of file to determine what to send back to client; copy pleading indexes and correspondence;
>
> 10/12/93  Review and revise memorandum regarding file . . . .

Seyburn charged Bakshi $182 [sic: $192][3] for these activities, plus $250 for photocopying. Bakshi did not pay this bill, and the unpaid balance on Bakshi's account was then $55,723.

In 1995, Bakshi brought a legal malpractice action against Seyburn, claiming, among other things, that he should be relieved of his obligation to pay Seyburn for negligently performed legal services in the prior unsuccessful litigation. In a motion for summary disposition, Seyburn argued that Bakshi's action was barred in part by the two-year statute of limitations for malpractice claims, MCL 600.5805(5) (now MCL 600.5805[6]). Contrary to the position that it takes in this litigation, Seyburn stated in an affidavit that it last performed legal services for Bakshi on March 3, 1993, and that it "discontinued" providing legal services to Bakshi on April 27, 1993 (the latter date refers to the date it drafted its motion to withdraw as counsel). The trial court commented in its opinion that "[Seyburn was] hired for the particular purpose of representing [Bakshi] and did not discontinue serving [Bakshi] with respect to those matters until October 1993 . . . ." The trial court dismissed the malpractice action in 1999, and [the Court of Appeals] affirmed the dismissal in *Bakshi v Gold*, unpublished opinion per curiam of the Court of Appeals, issued August 10, 2001 (Docket No. 220867).

---

[3] The Court of Appeals opinion states that plaintiff charged defendant $182 for the file-review services; however, the charges on the actual invoice for the October 10-12, 1993, activities total $192.

4

Our Supreme Court denied leave to appeal. *Bakshi v Gold*, 467 Mich 851 (2002).

Seyburn filed its complaint in the instant action for unpaid legal fees on October 9 [sic: 8], 1999, while Bakshi's malpractice action was pending. Bakshi moved for summary disposition pursuant to MCR 2.116(C)(7), arguing that the six-year statute of limitations, MCL 600.5807(7) (now MCL 600.5807[8]), had expired. He maintained that Seyburn's claim accrued in November 1992, when he last paid for legal services. In response, again contrary to the position it took in the malpractice case, Seyburn argued that it last performed legal services on October 12, 1993, when it complied with Bakshi's request to be provided with a copy of his file. It asserted that the trial court in the malpractice action had already determined that its services ended in October 1993.

In 2001, the trial court granted Bakshi's motion for summary disposition based on the statute of limitations, and held that Seyburn's action accrued in 1992, when Bakshi stopped paying Seyburn's legal fees. Seyburn appealed that decision to [the Court of Appeals], which, in a split decision, reversed the trial court's decision. The majority agreed with Seyburn that its action was timely filed because its claim accrued on October 12, 1993, the last date it performed a properly billable service. *Seyburn, Kahn, Ginn, Bess, Deitch and Serlin, PC v Bakshi*, unpublished opinion per curiam of the Court of Appeals, issued March 13, 2003 (Docket No. 238697). One judge, however, issued a separate partially dissenting opinion, which agreed with the majority's conclusion that summary disposition was improperly granted to Bakshi. However, that judge wrote that the matter should be remanded to the trial court to determine whether "there was a proper action on an open account" and, if so, the date of the last proper billable entry. In this regard, the partially dissenting judge opined that the trial court should have considered whether Seyburn could ethically and legally charge Bakshi for the tasks it performed in October 1993 in relation to his request for a copy of his file. However, she also commented that the October dates were not necessarily dispositive of the question of when Seyburn's claim accrued. *Id*., slip op at 1-2 (White, J., concurring in part and dissenting in part).

Bakshi thereafter filed an application for leave to appeal in the Michigan Supreme Court. In lieu of granting leave to appeal, the Supreme Court vacated [the Court of Appeals] judgment and

5

remanded the case to the trial court for further proceedings for the reasons stated in the partially dissenting opinion. *Seyburn, Kahn, Ginn, Bess, Deitch and Serlin, PC v Bakshi*, 469 Mich 958 (2003).

On remand, the trial court held a hearing on the statute of limitations issue. It determined that Seyburn performed the additional work in October 1993, at Bakshi's request and for his benefit, and that Seyburn could ethically charge Bakshi for those services. From this, the court reasoned that the limitations period did not begin to run until October 12, 1993, and thus held that Seyburn's action, filed on October 9 [sic: 8], 1999, was timely filed within the six-year period of limitations. MCL 600.5807(8) (formerly MCL 600.5807[7]). Thus, the trial court determined that Bakshi was liable for legal fees of $62,763, and that Seyburn was entitled to interest of $510,405.07, as of August 16, 2006.[6] It issued judgment ordering Bakshi to pay Seyburn $573,168.07.

_____

[6] Seyburn charged 18 percent annual interest on unpaid balances; thus, Bakshi's outstanding balance grew from $62,763 in 1993 to $573,168 in 2006.[4]

_____

Defendant appealed the trial court's decision. On April 1, 2008, the Court of Appeals majority, in a published opinion, reversed and remanded to the trial court to enter judgment in favor of defendant.[5] The majority held that plaintiff's claim accrued on September 30, 1993, which is the date that the Court of Appeals terminated the underlying attorney-client relationship. The majority also held that plaintiff's October 1993 acts of copying and returning defendant's file did not extend the accrual date under MCL 600.5807(8). In reversing the trial court, the majority articulated that in the context of litigation, where the attorney is no longer

_____

[4] *Seyburn, Kahn, Ginn, Bess, Seitch and Serlin, PC v Bakshi*, 278 Mich App 486, 489-493; 750 NW2d 633 (2008).

[5] *Id*. at 501.

6

providing services to the client but a dispute exists over legal fees, a claim for unpaid legal fees accrues on the date that the attorney-client relationship is terminated. In reaching its decision, the majority reasoned that the law governing a mutual and open account, MCL 600.5831, does not apply in this case because the law specifically governing the termination of the attorney-client relationship has precedence over a statute of general applicability.[6]

Judge Jansen fully concurred in the result but would have decided the case more simply; specifically, by holding that the attorney-client relationship terminated on September 30, 1993, and that the subsequent acts of copying and returning defendant's file did not extend the relationship beyond the date of the court-granted termination. Therefore, the breach of contract action for the recovery of unpaid legal fees also accrued on the termination date. This Court granted leave to appeal.[7]

## II. Standard of Review

The question whether a cause of action is barred by the applicable statute of limitations is one of law,[8] which this Court reviews de novo. This Court also reviews de novo a trial court's decision regarding a summary disposition motion.[9]

---

[6] *Id*. at 500 n 10.

[7] *Seyburn, Kahn, Ginn, Bess, Seitch and Serlin, PC v Bakshi*, 482 Mich 1077 (2008).

[8] *Moll v Abbott Laboratories*, 444 Mich 1, 26; 506 NW2d 816 (1993).

[9] *Mayberry v Gen Orthopedics, PC*, 474 Mich 1, 5; 704 NW2d 69 (2005).

III. Analysis

At issue in this case is the proper accrual date for a claim by an attorney against his client for unpaid legal fees. In order to address this question, we must first discern whether this case is governed by contract theory or whether there was a mutual and open account between plaintiff and defendant.

A. Breach of Contract Claim

Under the rules governing claims alleging breach of contract, the statute of limitations for bringing a cause of action is six years.[10] A claim accrues, and the limitations period begins to run, when the claim may be brought.[11] For a breach of contract action, the limitations period generally begins to run on the date that the breach occurs.[12]

Under a mutual and open account theory, the date of accrual is calculated differently than it is under a contract for services. The language of MCL 600.5831, which is the statutory provision governing a mutual and open account current, provides: "In actions brought to recover the balance due upon a mutual and open account current, the claim accrues at the time of the last item proved in the account."

---

[10] MCL 600.5807(8).

[11] MCL 600.5827.

[12] *AFSCME v Highland Park Bd of Ed*, 457 Mich 74, 90; 577 NW2d 79 (1998); *Harris v Allen Park*, 193 Mich App 103, 106; 483 NW2d 434 (1992).

8

A "mutual account" is defined as "[a]n account showing mutual transactions between parties, as by showing debits and credits on both sides of the account."[13] The definition of an "open account" is: "1. An unpaid or unsettled account. 2. An account that is left open for ongoing debit and credit entries and that has a fluctuating balance until either party finds it convenient to settle and close, at which time there is a single liability."[14]

The definitions for a "mutual account" and an "open account" have been used together to classify certain accounts as mutual and open accounts current.[15] This Court has held that for an account to be considered a mutual and open account current, it is necessary for the account to be "mutual as well as open."[16] This "means a course of dealing where each party furnishes credit to the other on the reliance that upon settlement the accounts will be allowed, so that one will reduce the balance due on the other."[17]

Applying these principles to the facts of the present case, we conclude that the parties do not have a mutual and open account current because there was no longer a mutual relationship between the parties and also because plaintiff and defendant had an express contract with one another. For a mutual and open account current to exist, there must be a mutual relationship. We stated this exact

---

[13] Black's Law Dictionary (7th ed).

[14] *Id.*

[15] See MCL 600.5831.

[16] *In re Hiscock's Estate*, 79 Mich 536, 538; 44 NW 947 (1890).

[17] *Id.*

principle in *Fuerbringer v Herman*:[18] "It is essential to a mutual account that there be reciprocity of dealing; the items must not be all on one side; there must be mutuality."[19] In the present case, defendant made his last payment to plaintiff in November 1992 and informed plaintiff that he would not make any further payments. Where there is no longer a reciprocal relationship, as is the case here, it would be contrary to hold that a mutual and open account current exists between the parties.

Moreover, despite the lack of mutuality between the parties, there is additional authority to support our holding that a mutual and open account does not exist between the parties. This Court has previously recognized that the existence of a contract rules out the existence of a mutual and open account "where the dealings of the parties relate entirely to and are governed by a special contract for the payment of money . . . ."[20] Similarly, in *A Krolik & Co v Ossowski*,[21] this Court acknowledged a comparable proposition when defining an open account:

> "An open account is one which consists of a series of transactions and is continuous or current, and not closed or stated. However, all accounts which are not stated or reduced to writing are not necessarily open accounts. Thus, cases of bailment, or *express contract defining the liabilities of the parties*, whether evidenced by

---

[18] *Fuerbringer v Herman*, 225 Mich 76; 195 NW 693 (1923).

[19] *Id*. at 78.

[20] *Goodsole v Jeffery*, 202 Mich 201, 203; 168 NW 461 (1918).

[21] *A Krolik & Co v Ossowski*, 213 Mich 1; 180 NW 499 (1920).

writings or not, *are not as a general rule open accounts . . . .*" 1 C.J. p. 601. [Emphasis added.][22]

In the present case, it is undisputed that plaintiff and defendant entered into a signed contract containing specific terms. The contract stated that plaintiff agreed to provide legal services to defendant and, in turn, defendant would make payments of money to plaintiff. Specifically, the contract provided for plaintiff to send a billing statement by the 20th of each month, using hourly billing at an established rate, and also required defendant to pay within 10 days of the date of the statement. In addition, the contract defined the liabilities of both parties. Because it is clear that a contract existed between the parties, we do not conclude that there is a mutual and open account in the present situation.

Furthermore, when the trial court inquired whether there was an open account between plaintiff and defendant, plaintiff's counsel answered that there was not: "I'm going to answer the Court's question no . . . . [T]here's one count in the complaint which is for breach of contract." In addition, plaintiff's complaint contained one count, labeled "Breach of Contract." The complaint neither cited the mutual and open account statute, MCL 600.5831, nor used the phrase "mutual and open account."

Accordingly, because there was no longer a mutual relationship between the parties and because plaintiff and defendant had an express contract with one

---

[22] *Id*. at 7.

11

another, we hold that the parties' obligations to one another are governed by the explicit terms of their contract and not a mutual and open account current.

## B. Statute of Limitations

Because we conclude that the parties' obligations in the present case are governed by contract rather than a mutual and open account current, we must now consider the proper accrual date for purposes of the statute of limitations.[23] As we stated earlier, in a breach of contract action, the statutory period generally begins to run on the date that the breach occurs.[24] However, we conclude that a narrow exception exists in the litigation context where the client breaches the agreement during the course of the attorney's representation.

A contract is breached when one party fails to perform its portion of the contract.[25] Thus, under general contract principles, an attorney's cause of action to recover attorney fees would accrue on the date the client breached the parties' agreement by failing to pay in accordance with its terms. We conclude that, in the context of litigation, the special features of the attorney-client relationship necessitate an exception to the general rule where the client breaches the agreement during the representation. Once litigation has commenced, an attorney

---

[23] Although we conclude that the parties' obligations are governed by contract rather than a mutual and open account, we do not agree with the Court of Appeals opinion suggesting that there is an attorney-litigation exception to the mutual and open account statute.

[24] See *Highland Park Bd of Ed*, *supra* at 90; *Harris*, *supra* at 106.

[25] *HJ Tucker & Assoc, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 562; 595 NW2d 176 (1999).

cannot discontinue serving his or her client without an order of the court because an attorney's ability to terminate the representation may be limited by his or her responsibilities to the client.[26] Although the client may have ceased making payments to the attorney, the attorney's representation of the client continues until the court has permitted the termination.[27]

In the present case, defendant had stopped making payments to plaintiff in late 1992, but defendant never terminated the attorney-client relationship. It was plaintiff that filed a motion in the Court of Appeals seeking to withdraw from the case. Withdrawal was finally granted on September 30, 1993, and the attorney-client relationship was then terminated.[28] Because plaintiff's obligations to defendant continued until the Court of Appeals terminated the relationship, we hold that plaintiff's cause of action to recover attorney fees accrued on the date that the attorney-client relationship was terminated: September 30, 1993.[29]

---

[26] MRPC 1.16(b) and (c); also see *White v Sadler*, 350 Mich 511, 526; 87 NW2d 192 (1957), which stated:

> [W]hen an attorney once enters an appearance for a client and *for any reason* later finds he cannot or does not intend to continue to represent that client, he owes a clear duty to his client and opposing counsel and to the court to take timely affirmative steps in the pending case to be relieved of his retainer and have his appearance withdrawn. [Emphasis in the original.]

See also *Mitchell v Dougherty*, 249 Mich App 668, 683; 644 NW2d 391 (2002); *Stroud v Ward*, 169 Mich App 1, 6; 425 NW2d 490 (1988).

[27] See *Mitchell*, *supra* at 683.

[28] *Maddox v Burlingame*, 205 Mich App 446, 450; 517 NW2d 816 (1994); *Stroud*, *supra* at 6.

[29] Where an attorney and a client have an agreement that requires the client to pay on a date *after* the termination of the attorney-client relationship, breach of

Finally, plaintiff contends that the accrual date can be extended beyond the termination of the attorney-client relationship if the attorney performs follow-up or ministerial services for the client, such as copying and returning the client's file. We hold that the tasks of reviewing, copying, and returning a client's file do not extend the date of accrual beyond the termination date of the attorney-client relationship.

The Court of Appeals has opined on this issue. In a case for legal malpractice, the Court of Appeals held: "In general, once an attorney has discontinued serving the plaintiff-client, additional acts by the attorney will not delay or postpone the accrual of a legal malpractice claim."[30] In another case, the Court of Appeals reasoned that to extend the date of accrual for follow-up activities to otherwise completed matters would give attorneys a powerful advantage over former clients.[31] Although this Court is not bound by the decisions of the Court of Appeals, we find the Court of Appeals' reasoning on this issue persuasive for our holding on this question. Thus, we hold that plaintiff's acts of reviewing, copying, and returning the file to defendant do not extend the accrual date in this matter past the termination date of the attorney-client relationship.

---

contract rules apply and the cause of action for unpaid legal fees accrues on the date payment is due and the client fails to pay.

[30] *Kloian v Schwartz*, 272 Mich App 232, 238 n 2; 725 NW2d 671 (2006).

[31] See *Bauer v Ferriby & Houston, PC*, 235 Mich App 536, 539; 599 NW2d 493 (1999).

While the plaintiff's acts of reviewing, copying, and returning the file to defendant do not extend the accrual date of the claim regarding the earlier unpaid legal fees, we hold that the minimal costs associated with the file-review services are timely and must be paid. We reach this conclusion because the additional services rendered after the termination equate to a separate contract apart from the parties' original contract. This separate contract is not governed by the terms included in the original contract because the original contract was dissolved when the Court of Appeals granted the motion to terminate the attorney-client relationship. After the termination was granted, defendant requested a copy of his file from plaintiff. Plaintiff acquiesced to the request and then billed defendant on November 12, 1993, for the additional services performed in October 1993. According to plaintiff's invoice, payment for the October 1993 services was due on November 23, 1993. Plaintiff filed its claim on October 8, 1999. Thus, plaintiff's claim to recover the fees associated with the file-review services is timely and is not outside the statute of limitations.

Although the file-review services effectively constituted a separate contract, there were no specific contractual terms governing the costs and fees to review the file. Under MRPC 1.5(a), an attorney must charge a reasonable fee for services rendered to a client. In the current case, plaintiff charged $442 to review and copy the defendant's file. The reasonableness of the costs assessed for the file-review services were not contested. Therefore, we conclude that the fees charged for the

15

file-review services are a reasonable charge, and defendant must pay $442 to plaintiff.

To summarize, because we hold that the proper date of accrual in this case is September 30, 1993, the statute of limitations bars the plaintiff's claim for recovery of the earlier, unpaid legal fees. The plaintiff filed the present cause of action in the trial court on October 8, 1999, which is more than six years from the date that the claim accrued on the earlier fees. Moreover, plaintiff's acts of copying and returning defendant's file do not extend the accrual date beyond the date that the attorney-client relationship was terminated. However, we conclude that the minimal costs associated with the file-review services is a separate contract, and the claim to recover those fees is timely and is not barred by the statute of limitations.

## C. *In re Dei's Estate*[32]

Plaintiff asserts that if this Court holds that there is not a mutual and open account in the present case, then we will have to overrule *In re Dei's Estate*. We disagree. In *Dei's Estate*, an attorney performed legal services for his client from early 1925 to May 1933. The client made only two payments on the account in 1925. In 1935 the client died; however, the attorney was not made aware of the death until 1938, at which time he filed suit to collect the unpaid legal fees. This Court held that the attorney's cause of action on the mutual and open account did

---

[32] *In re Dei's Estate*, 293 Mich 651; 292 NW 513 (1940).

16

not accrue until the date of the last item of services that the attorney had performed for the client.[33]

The central issue in *Dei's Estate* was whether the attorney's claim was barred by the statute of limitations, which required this Court to first determine whether the account was a mutual and open account current. This Court determined that, pursuant to 1929 CL 13977 (now codified as MCL 600.5831), there was a mutual and open account. Therefore, the attorney's claim for unpaid legal fees accrued on the last date that services were rendered.

Contrary to plaintiff's contentions, we conclude that both the facts and the issues in *Dei's Estate* are distinguishable from those in the present case. In *Dei's Estate*, there was no contract between the attorney and the client, and there apparently was no agreement regarding the rate that the attorney would charge or when payment was due. Rather, the attorney would simply make entries in his day book after deciding on the value of his services. Furthermore, it was clear that the end of the attorney's services coincided with the termination of the attorney-client relationship. There was never a lack of mutuality between attorney and client, and the attorney-client relationship only terminated because the attorney's services ceased. Therefore, in *Dei's Estate*, this Court did not focus on the nature of the attorney-client relationship. Rather, it addressed the general issue whether the statute of limitations barred an attorney from recovering unpaid legal fees on what

---

[33] *Id.* at 656-658.

17

was clearly a mutual and open account. In contrast, it is apparent that the parties in the present case had a written agreement detailing rates and time for payment, and plaintiff brought this action to recover amounts it had charged defendant under the terms of that contract. Thus, it is apparent that *Dei's Estate* is distinguishable from the present case, and our decision today does not overrule settled precedent.

## IV. Conclusion

We hold that the parties' obligations to one another are governed by the explicit terms of their contract rather than by the laws governing mutual and open accounts current because the parties did not have a mutual relationship and because plaintiff and defendant had an express contract detailing the specific terms of their agreement. Moreover, we also hold that plaintiff's breach of contract claim to recover the unpaid legal fees under the original contract accrued on September 30, 1993, which is the date that the attorney-client relationship was terminated. Furthermore, we do not extend the accrual date beyond the date of the attorney-client termination for plaintiff's acts of reviewing, copying, and returning defendant's file. Because plaintiff did not file this claim until October 8, 1999, we hold that, pursuant to MCL 600.5807(8), the breach of contract action to recover the unpaid legal fees under the original contract is barred by the six-year statute of limitations. Finally, we hold that the costs and fees attributed to the file-review services effectively constituted a separate contract, which presents a timely and actionable claim.

18

We therefore affirm the Court of Appeals in part, reverse in part, and remand to the trial court for entry of judgment in favor of plaintiff in the amount of $442, with no interest to be assessed under the contract.

Elizabeth A. Weaver
Marilyn Kelly
Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

19