*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN BRADLEY MACKENZIE,

Plaintiff-Appellant,

v

JONATHAN TOBY WHITE,

Defendant-Appellee.

UNPUBLISHED
January 2, 2020

No. 346331
Ingham Circuit Court
LC No. 18-000291-NM

STEVEN BRADLEY MACKENZIE,

Plaintiff-Appellant,

v

GREGORY J. CROCKETT,

Defendant-Appellee.

No. 347826
Ingham Circuit Court
LC No. 18-000695-NM

Before: SWARTZLE, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

In these consolidated appeals, plaintiff Steven MacKenzie appeals by right the trial courts' orders granting summary disposition in favor of defendants in these legal malpractice actions. The lawsuits stem from defendant Gregory Crockett's representation of MacKenzie in a criminal trial that resulted in convictions, and defendant Jonathan White's representation of MacKenzie in the appeal of those convictions, as well as in a divorce action, which action also involved tort claims. The issues on appeal primarily concern whether the malpractice actions were time-barred. We affirm in both cases.

In the midst of a bitter divorce case, MacKenzie attacked his now ex-wife, resulting in convictions of attempted murder and aggravated domestic assault, multiple appellate proceedings that ultimately affirmed the convictions, the addition of various intentional tort claims by

-1-

MacKenzie's former wife in the divorce action predicated on the assault, and the settlement of those tort claims for $25,000.

With respect to the legal malpractice complaint against Crockett, MacKenzie alleged that Crockett committed "acts of artifice to fraudulently conceal his liability." MacKenzie claimed that Crockett had falsely stated that he had prior experience in successfully representing clients against attempted murder charges and that there were no issues upon which to base an appeal. MacKenzie further contended that Crockett arranged for White to handle the criminal appeal so that White would not raise issues that would expose Crockett "to a claim of action." MacKenzie accused Crockett of obtaining MacKenzie's signature on a blank engagement letter, which Crockett then delivered to White so that White could gain authorization to represent MacKenzie in the appeal. MacKenzie asserted that as a result of Crockett's legal malpractice, MacKenzie suffered psychological pain and distress, along with financial losses. MacKenzie requested judgment in the amount of at least $200,000, plus punitive damages.

With respect to the legal malpractice complaint against White, MacKenzie alleged that White failed to challenge or appeal a postjudgment divorce ruling, entered into the settlement of the tort claims without consultation with or permission by MacKenzie, and failed to properly preserve oral argument in the initial criminal appeal, which failure White did not disclose to MacKenzie. MacKenzie also complained that White had not timely mailed the prosecutor's response brief on appeal to MacKenzie for review, that White failed to inform MacKenzie that he had the right to file a Standard 4 brief, and that White raised untenable arguments in the brief on appeal. MacKenzie further alleged that White and Crockett were law and/or office partners and that White violated the Michigan Rules of Professional Conduct (MRPC) by accepting a referral from Crockett to represent MacKenzie in the criminal appeal.[1] According to MacKenzie, because of the relationship between the two attorneys, White did not diligently and properly pursue appellate arguments that were detrimental to Crockett and that could result in Crockett's being disciplined or held civilly liable to MacKenzie. MacKenzie asserted that as a result of White's legal malpractice, MacKenzie suffered both psychological pain and distress and financial losses. MacKenzie requested judgment in the amount of at least $285,000.

The action against White was summarily dismissed on the basis that the suit was time-barred under the governing two-year statute of limitations. Subsequently, the action against Crockett was summarily dismissed on the basis of collateral estoppel tied to the dismissal of the case against White and because the statute of limitations had expired even accepting that Crockett fraudulently concealed the cause of action.

"The question whether a cause of action is barred by the applicable statute of limitations is one of law, which this Court reviews de novo." *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v Bakshi*, 483 Mich 345, 354; 771 NW2d 411 (2009). This Court also reviews de novo a trial

---

[1] Documentary evidence established that Crockett and White each owned a 1/3 interest in an office condominium, sharing some common areas. But they were not law partners, and their offices and staff were independent of each other.

court's ruling on a motion for summary disposition. *Id.* Summary dismissal is appropriate under MCR 2.116(C)(7) when an action is barred because of the "statute of limitations." In *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), this Court recited the principles pertaining to a motion for summary disposition brought pursuant to MCR 2.116(C)(7):

> Under MCR 2.116(C)(7) . . ., this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [Citations omitted.]

In general, a legal malpractice claim accrues at the time an attorney discontinues serving a party in a professional capacity on the matters giving rise to the claim regardless of the time the party discovers the claim. MCL 600.5838(1).[2] In accordance with the governing statute of limitations, a plaintiff must bring a legal malpractice action within the later of (1) two years of the time a claim first accrues, MCL 600.5805(8), or (2) six months after the plaintiff discovered or should have discovered the existence of the claim, MCL 600.5838(2). Additionally, a statute of repose provides that a legal malpractice action shall not be commenced after the earlier of (1) the expiration of the period of limitations or (2) six years after the date of the act or omission that

---

[2] "[T]his Court has stated that an attorney's representation of a client generally continues until the attorney is relieved of that obligation by the client or the court." *Kloian v Schwartz*, 272 Mich App 232, 237; 725 NW2d 671 (2006). Additionally, retention of an alternate or substitute attorney effectively terminates an existing attorney-client relationship. *Id.* "These rules, however, are useful only to the extent that they actually serve to measure the accrual of a claim within the meaning of MCL 600. 5838(1)." *Id.* at 237-238. There are some factual situations that do not permit application of these rules; instead, certain circumstances mandate the application of the more general rule that a legal malpractice claim accrues on counsel's last day of professional service or upon completion of a specific legal task that the attorney was retained to perform. *Id.* at 238. Ministerial or minor follow-up acts after discontinuation of representation, e.g., making a file available to a former client, will not work to extend the period of representation and create a new date of accrual. *Bauer v Ferriby & Houston, PC*, 235 Mich App 536, 539; 599 NW2d 493 (1999) ("To hold that . . . follow-up activities attendant to otherwise completed matters of representation necessarily extends the period of service to the client would give providers of legal services a powerful disincentive to cooperate with a former client who needs such attention. We conclude that the proper inquiry is whether the new activity occurs pursuant to a current, as opposed to a former, attorney-client relationship.").

is the basis for the claim. MCL 600.5838b(1). "Unlike a statute of limitations, a statute of repose bars a claim after a fixed period of time from the defendant's act or omission" absent consideration whether the plaintiff had discovered the claim. *Nortley v Hurst*, 321 Mich App 566, 572; 908 NW2d 919 (2017).

MCL 600.5855 provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

MCL 600.5855 plainly does not constitute or create a cause of action. Rather, MCL 600.5855 operates to toll the applicable statute of limitations "when a party conceals the fact that the plaintiff has a cause of action." *Sills v Oakland Gen Hosp*, 220 Mich App 303, 310; 559 NW2d 348 (1997). "The plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment." *Id.* "The plaintiff must prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery. Mere silence is insufficient." *Id.*

In sum, a party claiming legal malpractice must file suit within two years of accrual of a claim, within six months after the party discovered or should have discovered the existence of a claim, or, if there was fraudulent concealment of a claim, within two years after the party discovered or should have discovered the existence of a claim, unless, under the statute of repose, six years has passed since the date of the act or omission that served as the basis for the claim. Neither the six-month discovery provision nor the six-year period found in the statute of repose is relevant for purposes of these cases.

In regard to Crockett, we find he discontinued serving MacKenzie in a professional capacity relative to the criminal case in October 2014, and MacKenzie commenced the legal malpractice action against Crockett on October 4, 2018. Because the two-year statute of limitations had elapsed by the time MacKenzie sued Crockett, MacKenzie relied on tolling under the fraudulent concealment statute, MCL 600.5855. Initially, we do not believe that collateral estoppel had any application to the case against Crockett, considering that the statute of limitations analysis applicable to White would not be the same as the analysis applicable to Crockett because of different dates relative to the discontinuation of representation and to the filing of complaints, as well as the fact that MacKenzie only raised tolling under MCL 600.5855 in relation to Crockett. See *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006) ("Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding."). Regardless, MacKenzie cannot escape the application of the statute of limitations.

The trial court stated that MacKenzie had until October 21, 2018, to file suit and failed to do so, even though MacKenzie commenced the action on October 4, 2018. MacKenzie seizes on this ostensible flaw in the court's ruling. But the trial court plainly misspoke and clearly meant October 21, 2016, as the court had earlier mentioned that the claim accrued on October 21, 2014, which was the date that MacKenzie was sentenced and that White was retained to pursue the criminal appeal.

MacKenzie asserts that his complaint alleged a single cause of action—legal malpractice—and not an independent fraud tort. MacKenzie then argues that it was his belief that Crockett was well aware of numerous mistakes that he had made during the trial, which were now being presented by his current attorney in an MCR 6.500 motion, and that Crockett had this knowledge when he tricked MacKenzie into retaining White, who in turn effectively covered up the mistakes by not raising the issues on appeal. This, according to MacKenzie, constituted the fraudulent concealment. MacKenzie contends that he did not discover the trickery until June 2018 when he obtained information through discovery. MacKenzie also argues that he first learned that he had a cause of action against Crockett in November 2016 when he retained current counsel, who made him aware of the issues that should have been raised on appeal.

MCL 600.5855 requires a focus on whether Crockett "fraudulently conceal[ed] the existence of [a] claim . . . from the knowledge of" MacKenzie. For MacKenzie's theory to be viable, it must be shown that the reason Crockett allegedly used fraud to funnel the appeal to White was so that White would not raise issues on appeal as part of an effort to conceal the existence of a legal malpractice claim from MacKenzie. This proposition necessarily fails because White actually raised three alleged instances of ineffective assistance by Crockett in the appeal.

Moreover, MCL 600.5855 provides that "the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim . . . ." Again, White did in fact raise claims of ineffective assistance of counsel in his brief on appeal, which was filed in July 2015, and MacKenzie was aware of the issues that White raised in the appeal. Accordingly, while MacKenzie might not have been aware of all the prospective claims of malpractice that he conceivably had against Crockett, he did have knowledge of the existence of a claim, yet it was over three years later before he filed suit against Crockett. Also, or in the alternative, MacKenzie himself filed an appeal to the Supreme Court on June 2, 2016, raising ineffective assistance of counsel claims, so he would have been aware of a malpractice claim against Crockett almost two and a half years before filing the complaint. Therefore, fraudulent concealment, assuming it did occur, cannot save MacKenzie's case from being time-barred.

With respect to White, we first hold that any claims of legal malpractice connected to settlement of the tort claims and failure to file an appeal of a postjudgment divorce ruling were barred by the statute of limitations. The tort claims and the divorce allegations were all part of a single court case and file under one lower court docket number. On January 11, 2016, a stipulated order, signed by MacKenzie, was entered in the divorce/tort action, indicating an agreement to pay MacKenzie's ex-wife $25,000. The stipulated order further provided "that the obligation of the attorneys for the parties shall terminate upon the filing of this Stipulation." The

stipulated order also stated that the parties were reaching "an agreement with regard to all outstanding issues pending in this matter . . . ." The stipulated order additionally provided that it "resolves the last pending claim and closes the case . . . ." We conclude that these quoted provisions are all-encompassing such that the stipulated order must be construed as precluding any further proceedings as to the tort claims *and* any further proceedings regarding the divorce case, including an appeal of the postjudgment divorce ruling. Accordingly, the stipulated order constituted an order terminating White's representation of MacKenzie in the *entire* case. Therefore, the representation having been discontinued on January 11, 2016, the complaint against White filed on May 2, 2018, was untimely under the two-year statute of limitations. MacKenzie did not allege fraudulent concealment against White.

This leaves us with the alleged legal malpractice committed by White in association with his representation of MacKenzie in the appeal of the criminal convictions. The case against White was resolved solely on the basis of the statute of limitations, and the key question regarded the date on which White discontinued serving MacKenzie in a professional capacity with respect to the criminal appeal. This Court issued its original opinion affirming MacKenzie's convictions and sentences on April 26, 2016. *People v MacKenzie*, unpublished per curiam opinion of the Court of Appeals, issued April 26, 2016 (Docket No. 324893). In an affidavit executed by White, he averred that "[s]oon after" the opinion was released, Bart Frith[3] and MacKenzie's father called White's office and indicated that MacKenzie had decided to "terminate" White's services as his attorney and wanted White to release the case file to MacKenzie's father so MacKenzie could appeal to the Supreme Court on his own or with a new attorney. White also averred that on April 29, 2016, he sent MacKenzie a letter with the appellate opinion in it and an authorization form for MacKenzie to sign so that the file could be released to MacKenzie's father. According to White, he directed his paralegal to prepare and arrange the file for pickup. White asserted in his affidavit that his "representation . . . in the criminal appeal ended by April 29, 2016."

In an affidavit executed by MacKenzie and attached to his response to White's motion for summary disposition, MacKenzie averred that while he had requested return of his "personal property," he "made no statements or requests to" his father or Frith to inform White that his legal services were no longer needed. MacKenzie further asserted that neither his father nor Frith "were instructed or authorized . . . to inform . . . White his services were no longer needed." MacKenzie also claimed in his affidavit that his father and Frith would testify that White's averment that the two men had called White's office to terminate services on MacKenzie's behalf was "false and misleading."[4] We note that this last averment entails hearsay, MRE 801,

---

[3] Frith is an attorney, and MacKenzie had given Frith power of attorney to handle MacKenzie's property and financial affairs during his incarceration. Frith also served as trustee of a trust established by MacKenzie.

[4] In MacKenzie's motion for reconsideration following the order of dismissal, he attached an affidavit executed by his father. In the affidavit, MacKenzie's father averred that he had picked up MacKenzie's "personal property" from White's office and that in reviewing the documentation received, he "did not observe documents that were obviously of a legal nature."

and would not be admissible through MacKenzie's testimony, MRE 802, making it an improper consideration for purposes of summary disposition. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999).

The retainer agreement signed by MacKenzie provided that MacKenzie "may discharge [White] at any time on presentation of written notice." There was no evidence of written notice of discharge. The retainer agreement also provided that "Client understands that until the court enters an order discharging the attorney/client relationship the Attorney is required to represent the Client." In the retainer agreement, MacKenzie further agreed that White and Frith could "communicate openly with each other *on all matters*." (Emphasis added.)

A billing statement by White indicated that on May 2, 2016, his paralegal prepared the case file for release to MacKenzie's father. On May 4, 2016, MacKenzie's father signed the release acknowledging that the file had been surrendered to him.[5] On May 16, 2016, MacKenzie filed a grievance against White with the Attorney Grievance Commission (AGC). On June 2, 2016, MacKenzie filed a pro per application for leave to appeal in the Michigan Supreme Court.

In the trial court, MacKenzie had argued that his malpractice claim regarding the criminal appeal accrued on May 16, 2016, which was the date on which he filed his grievance against White with the AGC. We conclude that the filing of the grievance has absolutely no relevance to identifying the date when White discontinued serving MacKenzie in a professional capacity. In the alternative, MacKenzie had argued that the malpractice claim accrued on May 4, 2016, when White's office provided the case file to MacKenzie's father. We view this act as a ministerial task taken by White's office that did not operate as or mark the official discontinuation of legal services. See *Bauer v Ferriby & Houston, PC*, 235 Mich App 536, 539; 599 NW2d 493 (1999). In fact, giving the case file to MacKenzie's father on May 4, 2016, could be considered evidence that professional services had been discontinued *prior* to May 4, 2016, as claimed by White.

---

MacKenzie's father asserted that he had not requested "the return or transfer of a case file." Additionally, MacKenzie's father averred that MacKenzie had not asked him to advise White that White's services were being terminated and that he never told anyone at White's office that services were no longer needed or that White was being terminated. A trial court has the discretion to consider or not consider new legal theories or evidence relative to a motion for reconsideration. *Yachcik v Yachcik*, 319 Mich App 24, 42; 900 NW2d 113 (2017). Here, the trial court simply stated that "no palpable error was established" and that MacKenzie "merely presents the same issues ruled on" earlier. See MCR 2.119(F)(3). There was no express indication whether the court considered the newly-submitted affidavit, but the court did state that it had reviewed the motion. We generally do not consider evidence provided for the first time in a motion for reconsideration. *Quinto v Cross & Peters Co*, 451 Mich 358, 366 n 5; 547 NW2d 314 (1996). MacKenzie attached a comparable affidavit from his father to his motion for leave to amend his complaint, which was heard by the court and denied.

[5] The release also stated, "No copy has been retained by this office."

To the extent that MacKenzie argues on appeal that January 3, 2017, was the date of accrual because that was the date the circuit court finally ordered the withdrawal of White from the criminal case, we note that that argument was not preserved below. For purposes of civil litigation, we need not review issues raised for the first time on appeal. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). This Court may, however, "overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id.* As noted earlier, the retainer agreement stated that White was required to represent MacKenzie "until the court enters an order discharging" White. We conclude that the language in the retainer agreement cannot extend a period of representation *for purposes of accrual under MCL 600.5838* if there clearly were an earlier discontinuation of legal services. Otherwise, there could be instances when an attorney has had no involvement with a former client for decades but would remain subject to liability for malpractice if for whatever reason no court order was ever entered terminating the representation. To hold differently would offend the accrual language of MCL 600.5838(1).[6]

Additionally, although the retainer agreement provided that MacKenzie "may discharge" White "on presentation of written notice," the provision does not preclude discharge by other means, especially in the context of determining the accrual date under MCL 600.5838(1). Next, on June 2, 2016, MacKenzie filed the pro per application for leave to appeal with the Supreme Court, signaling that he was now representing himself in the appellate process, and that date could be viewed as the accrual date unless of course there were an earlier date when services were discontinued. See *Kloian v Schwartz*, 272 Mich App 232, 237; 725 NW2d 671 (2006).[7]

We are left to consider whether White discontinued serving MacKenzie in the waning days of April 2016, which, if answered in the affirmative, would render the May 2, 2018 complaint time-barred. White's affidavit did not give the specific date that Frith and MacKenzie's father each purportedly phoned White's office to terminate legal services and request the file. Since White, however, sent a letter to MacKenzie on April 29, 2016, that contained an authorization to release the case file, the phone calls would have been received on April 29th at the latest.

Assuming that it is proper to consider the affidavit by MacKenzie's father, the fact remains that according to White, Frith had also called White's office in late April 2016 and indicated that MacKenzie had decided to "terminate" White's services as his attorney and

---

[6] We do not mean to say that the language of a retainer agreement is irrelevant in analyzing the question of accrual, as it certainly should be taken into consideration if the date of discontinuation of services is unclear and difficult to identify in a particular case.

[7] MacKenzie did not argue below that June 2, 2016, was the date of accrual; therefore, to the extent that he makes that argument on appeal, it is unpreserved. The same is true relative to any argument that the "written notice" provision in the retainer agreement controlled the date of accrual.

wanted White to release the case file. We note that there was no admissible evidence that Frith did not call White's office or that he did not indicate that White's services were being terminated. We cannot help but highlight the sequence of events, starting with Frith's call to White's office on or about April 29, 2016, then the release of the case file on May 4, 2016, followed by the filing of the grievance against White on May 16, 2016, and then ending with MacKenzie's filing a pro per application for leave to appeal on June 2, 2016. This sequence of events demonstrates to us that White's professional services were discontinued by the end of April 2016, likely because MacKenzie was upset about losing his appeal. We recognize, again, that MacKenzie averred in his affidavit that he "made no statements or requests to" Frith to inform White that his legal services were no longer needed and that neither his father nor Frith "were instructed or authorized . . . to inform . . . White his services were no longer needed." We first note that MacKenzie did not specifically assert that he wished to continue receiving professional services from White when his appeal was rejected, and nothing that transpired after this Court's opinion affirming MacKenzie's convictions was released suggested that MacKenzie planned to continue using White's services. Moreover, as reflected in the retainer agreement, MacKenzie authorized Frith to communicate with White "on all matters," which would necessarily include the termination of legal services. We are not prepared to find that MacKenzie's self-serving affidavit was sufficient to create a factual dispute in regard to the running of the statute of limitations, and once again highlight the fact that Frith held a durable power of attorney which allowed him to handle these aspects of MacKenzie's life during his incarceration. *RDM Holdings*, 281 Mich App at 687. Reversal is unwarranted.

We affirm. As the prevailing parties, defendants may tax costs under MCR 7.219.


/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ James Robert Redford

-9-